**Exhibit A (Page 1 of 35)**

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
CALENDAR: A
PAGE 1 of 33
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 10 L 11901 ) |
| CITY OF CHICAGO, a municipal corporation; GORDON LOUNGE, INC., d/b/a BREWBAKERS ; RUTH G., INC., d/b/a McNALLY'S, | ) ) ) ) ) |
| Defendants. | ) |

### PLAINTIFF'S FIFTH AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, by and through his attorneys, ROMANUCCI & BLANDIN, LLC, and SALVATO & O'TOOLE, and complaining of the Defendants, CITY OF CHICAGO, a municipal corporation; GORDON LOUNGE, INC., d/b/a BREWBAKERS; and RUTH G., INC., d/b/a McNALLY's, pleading hypothetically and in the alternative, hereby states as follows:

### PARTIES

1.     That on October 27, 2011, Plaintiff, MICHAEL A. LAPORTA, was appointed as Guardian of the estate and person of Michael D. LaPorta, a disabled person in the Circuit Court of Cook County, Probate Division.

2.     That on and prior to January 12, 2010 and all times relevant herein, Plaintiff, MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, resided at 10719 South Talman Avenue in the City of Chicago, County of Cook,

and State of Illinois.

3.    That on and prior to January 12, 2010 and all times relevant herein, Michael D.

LaPorta (hereinafter "Michael D. LaPorta"), a disabled person, resided at 10719 South Talman

Avenue in the City of Chicago, County of Cook, and State of Illinois.

4.    That on and prior to January 12, 2010, and at all relevant times herein, Defendant,

CITY OF CHICAGO, was a municipal corporation, organized under the laws of the State of

Illinois.

5.    That on and prior to January 12, 2010, and at all relevant times herein, Defendant,

CITY OF CHICAGO, was a municipal corporation maintaining, as a division of said municipal

corporation, a certain police department, commonly referred to as the Chicago Police

Department.

6.    That on and prior to January 12, 2010, and at all relevant times herein, Defendant,

CITY OF CHICAGO, exercised control over the Chicago Police Department.

7.    That on and prior to January 12, 2010, and at all relevant times herein, PATRICK

KELLY (hereinafter "KELLY"), was employed by Defendant, CITY OF CHICAGO, as a police

officer with the CITY OF CHICAGO Police Department.

8.    That on and prior to January 12, 2010, and at all relevant times herein,

KELLY, resided at 10703 South Troy Street in the City of Chicago, County of Cook, State of

Illinois.

9.    That on and prior to January 12, 2010 and all times relevant herein, Defendant,

GORDON LOUNGE, INC., was a corporation licensed and organized under the laws of the

State of Illinois and doing business at 10350 South Western Avenue in the City of Chicago,

County of Cook, and State of Illinois, under the name "BREWBAKERS."

PAGE 6 of 33
2010-L-011601
11/5/2014 6:25 PM
ELECTRONICALLY FILED

**Exhibit A (Page 3 of 35)**

10.　　　That on and prior to January 12, 2010, and at all times relevant herein, Defendant, GORDON LOUNGE, INC., d/b/a BREWBAKERS (hereinafter "GORDON") by and through its agents, representatives, and/or employees, whether actual or apparent, owned, operated, maintained, and/or controlled a bar, cocktail lounge, lounge, and/or club, more commonly known as "Brewbakers", where it sold, served, and/or gave alcoholic beverages and/or liquor to the public.

11.　　　That on and prior to January 12, 2010 and all times relevant herein, Defendant, RUTH G., INC., was a corporation licensed and organized under the laws of the State of Illinois and doing business at 10350 South Western Avenue in the City of Chicago, County of Cook, and State of Illinois, under the name McNALLY'S.

12.　　　That on and prior to January 12, 2010, and at all times relevant herein, Defendant, RUTH G., INC., d/b/a McNALLY'S (hereinafter "RUTH G.") by and through its agents, representatives, and/or employees, whether actual or apparent, owned, operated, maintained, and/or controlled a bar, cocktail lounge, lounge, and/or club, more commonly known as "McNally's", where it sold, served, and/or gave alcoholic beverages and/or liquor to the public.

<b><u>FACTS COMMON TO ALL COUNTS</u></b>

**A. Kelly's History of Police Misconduct Prior to the Shooting of Michael D. LaPorta**

13.　　　That prior to the shooting of Michael D. LaPorta and on January 2, 2005, a complaint register # 302879 (hereinafter referred to as a "CR") was filed against KELLY for excessive force and/or other misconduct regarding his arrest of a civilian on January 2, 2005.

14.　　　That prior to the shooting of Michael D. LaPorta and on June 20, 2005, CR # 306380 filed against KELLY for neglect of duty, unbecoming conduct and/or other misconduct regarding a civilian on June 19, 2005.

15.     That prior to the shooting of Michael D. LaPorta and on July 22, 2005, CR # 307352 filed against KELLY for illegal arrest and/or other misconduct regarding a civilian on July 28, 2005.

16.     That prior to the shooting of Michael D. LaPorta and on August 22, 2005, CR # 307921 filed against KELLY for illegal arrest and/or other misconduct regarding a civilian on August 4, 2005.

17.     That prior to the shooting of Michael D. LaPorta and on September 19, 2005, CR # 308519 filed against KELLY for a domestic altercation and/or other misconduct while off duty on September 19, 2005.

18.     That prior to the shooting of Michael D. LaPorta and on April 21, 2006, CR # 312461 was filed against KELLY for excessive force and/or other misconduct regarding his arrest of a civilian April 21, 2006.

19.     That prior to the shooting of Michael D. LaPorta and on May 13, 2006, CR # 312940 was filed against KELLY for inadequate conduct, failure to provide services and/or other misconduct regarding a civilian May 13, 2006.

20.     That prior to the shooting of Michael D. LaPorta and on June 12, 2006, CR # 313525 was filed against KELLY for excessive force and/or other misconduct while off-duty on June 12, 2006.

21.     That prior to the shooting of Michael D. LaPorta and on October 8, 2006, CR # 1000316 was filed against KELLY for excessive force and/or other misconduct on October 8, 2006.

22.     That prior to the shooting of Michael D. LaPorta and on October 26, 2006, CR # 1000794 was filed against KELLY for excessive force and/or other misconduct while issuing a

citation to a civilian on October 17, 2006.

23.     That prior to the shooting of Michael D. LaPorta and on July 30, 2007, CR # 1008002 was filed against KELLY for excessive force and/or other misconduct regarding his arrest of a civilian on July 28, 2007.

24.     That prior to the shooting of Michael D. LaPorta and on August 22, 2007, CR # 1008618 was filed against KELLY for excessive force and/or other misconduct regarding his search of a civilian on August 19, 2007.

25.     That prior to the shooting of Michael D. LaPorta and on June 5, 2008, CR # 1017140 was filed against KELLY for excessive force and/or other misconduct regarding his inventory of a prisoner's property on June 3, 2008.

26.     That prior to the shooting of Michael D. LaPorta and on September 16, 2008, CR # 1020013 was filed against KELLY for excessive force and/or other misconduct regarding an alleged illegally arrest of a civilian on September 5, 2007.

27.     That prior to the shooting of Michael D. LaPorta and on August 1, 2009, CR # 1028782 was filed against KELLY for excessive force and/or other misconduct regarding an incident with a civilian on July 27, 2009.

**B.  Consuming alcohol on January 11 and 12, 2010**

28.     On January 11, 2010, at or around 11 p.m., PATRICK KELLY and Michael D. LaPorta visited RUTH G.'s bar, where KELLY was meeting four other off-duty Chicago Police Officers.

29.     Upon information and belief, Michael D. LaPorta was not familiar with the other four Chicago Police Officers at RUTH G.'s; the Chicago Police Officers were KELLY'S coworkers and friends.

30.     On January 11, 2010, Defendant, RUTH G.'s, by and through its agents, servants and/or employees, served alcoholic beverages to KELLY.

31.     KELLY was drinking alcohol at RUTH G.'s until the early morning hours of January 12, 2010.

32.     The alcoholic beverages RUTH G.'s served to KELLY caused him to become intoxicated.

33.     In the early morning hours of January 12, 2010, PATRICK KELLY and Michael D. LaPorta also visited GORDON lounge with several of the other off-duty Chicago Police Officers.

34.     Defendant, GORDON'S, by and through its agents, servants and/or employees, served alcoholic beverages to KELLY.

35.     The alcoholic beverages GORDON'S served to KELLY caused him to become intoxicated.

**C. Michael D. LaPorta is shot in the head**

36.     After consuming the alcoholic beverage(s) and/or liquor sold, served, and/or given to him by Defendants, RUTH G.'S and GORDON'S, KELLY, while still intoxicated, went to his residence located at 10703 South Troy Street in the City of Chicago, County of Cook, and State of Illinois.

37.     Michael D. LaPorta, accompanied KELLY, to 10703 South Troy Street, City of Chicago, County of Cook, State of Illinois.

38.     In the early morning hours of January 12, 2010, while KELLY and Michael D. LaPorta were alone at KELLY's residence, KELLY's service weapon discharged and a bullet from said weapon struck Michael D. LaPorta, in the back of his head.

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011001
PAGE 6 of 33

39.     Michael D. LaPorta, sustained serious and permanent injuries and suffered damages of a personal and pecuniary nature, including but not limited to, pain and suffering, disability, disfigurement, emotional trauma, medical expenses, and lost wages.

**D. Chicago Police Officers arrest Kelly, Assault charges later dismissed**

40.     In the early morning hours of January 11, 2010, at or around 4:30 a.m., Chicago Police Officer, Sergeant Kielbasa, arrived at KELLY's residence in response to a 9-1-1 call.

41.     Upon information and belief, when Sergeant Kielbasa arrived, KELLY was "highly intoxicated, belligerent and very irate."

42.     KELLY also began swinging his arms at Sergeant Kielbasa, placing her in fear of receiving a battery.

43.     Subsequently, KELLY was taken down by other arriving Chicago Police Officers and charged with assault.

44.     Upon information and belief, the assault charge was later dismissed with prejudice.

**E. Fraudulent Concealment, Continuing Violation Doctrine, Equitable Estoppel, Equitable Tolling, and Conspiracy**

45.     Since the filing of Plaintiff MICHAEL A. LAPORTA's Complaint at Law on October 18, 2010, Defendant CITY OF CHICAGO has taken numerous affirmative acts calculated to lull or induce Plaintiff into delaying his claims, or prevent Plaintiff from discovering claims.

46.     In particular, Defendant CITY OF CHICAGO has made numerous efforts to conceal, suppress, and/or stall its investigation into the January 11, 2010 incident where Michael D. LaPorta was shot in the head at Officer Kelly's home, as well as conceal, suppress, and/or

stall its finding from that investigation, forcing Plaintiff to repeatedly file Motions to Compel Evidence and Motions for Sanctions.

47.      Shortly after filing suit, Plaintiff requested IPRA's[1] investigative documents and findings from the Defendant CITY OF CHICAGO. In its answers to written discovery, which were answered over two years after the incident, the CITY OF CHICAGO reported that IPRA was still investigating the incident. Plaintiff was provided IPRA investigative documents for the first time on May 1, 2012, two years and four months after the incident. On October 1, 2014 (nearly four years and eight months since the shooting incident), Plaintiff sent a letter to Defendant CITY OF CHICAGO requesting that the CITY OF CHICAGO supplement its answers to Plaintiff's Request for Production regarding the IPRA file. To date, Plaintiff has not received a reply from Defendant CITY OF CHICAGO. Thus, there are two possible conclusions: either IPRA has *still* not reached a conclusive finding in its investigation, or the Defendant CITY OF CHICAGO has not supplemented its discovery responses and disclosed said report to Plaintiff MICHAEL A. LAPORTA as requested and required.

48.      Among numerous other tactics to conceal, suppress, and/or stall its investigation and corresponding liability into the January 11, 2010 incident, Defendant CITY OF CHICAGO also initially revealed that KELLY had 10 CRs prior to the shooting of Plaintiff Michael D. LaPorta. As discovery progressed, Defendant CITY OF CHICAGO later disclosed that KELLY had, in fact, 15 CRs prior to the shooting incident involving Michael D. LaPorta.

49.      Whether it's through stalling internal investigations, declining or rejecting FOIA requests, discovery violations, or forcing Plaintiff to repeatedly submit motions to compel

---

[1] "IPRA" stands for the Independent Police Review Authority. IPRA is a division of the City of Chicago, and IPRA investigates civilian allegations of police misconduct and Chicago Police Officer-involved shootings.

evidence and motions for sanctions, Defendant CITY OF CHICAGO has taken numerous affirmative acts calculated to lull or induce Plaintiff into delaying his claims, or preventing him from discovering claims.

50.　　In each of the years since the filing of this Complaint at Law in October 2010, Defendant CITY OF CHICAGO has misrepresented and/or under-reported the true nature and history of police misconduct committed by KELLY and other Chicago police officers.

51.　　Defendant CITY OF CHICAGO has had and presently does have a financial incentive to misrepresent and hide the true nature and scope of KELLY and other Chicago police officers' conduct and what Defendant CITY OF CHICAGO knew or should have known about KELLY's history of misconduct as he continued to work for the CITY OF CHICAGO.

52.　　After the March 2014 *Kalven v. City of Chicago* [2] decision, the subsequent July 2014 CITY OF CHICAGO public disclosure of information, and the related media investigations and reports, it became apparent that Defendant CITY OF CHICAGO was using a strategy designed to prevent any public or judicial scrutiny of its practices – and to prevent its practices and their implications from ever becoming visible.

53.　　Plaintiff will be prejudiced by the misrepresentations and/or concealment committed by Defendant CITY OF CHICAGO, if the Statute of Limitations and/or Statute of Repose are invoked to bar his claims.

54.　　Accordingly, Plaintiff pleads that Defendant CITY OF CHICAGO be equitably estopped from raising the statute of limitations or statute of repose as an affirmative defense. Further, the tolling of the statute of limitations and statute of repose has been delayed based on

---

[2] 2014 IL App (1st) 121846 (decided March 10, 2014)

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 9 of 33

the doctrine of equitable tolling, the continuing violation doctrine, and the fraudulent concealment statute (735 ILCS 5/13-215).

**F.  March 10, 2014 to Present – New Causes of Action Revealed**

55.      On March 10, 2014, in *Kalven v. City of Chicago*, the Illinois Appellate Court held that documents bearing on allegations of police misconduct are public information that can be requested through the Illinois Freedom of Information Act ("FOIA"), 5 ILCS 140/1 *et seq.* (West 2010). 2014 IL App (1st) 121846, at ¶ 13.  In *Kalven*, the plaintiff, who was a journalist, "submitted FOIA requests to the Chicago Police Department seeking two types of documents: (1) lists of Chicago police officers who amassed the most misconduct complaints (referred to as Repeater Lists or RLs); and (2) [CRs] . . . related to [the Chicago Police Department's] completed investigations into allegations of police misconduct against five officers." *Id.* at ¶ 2.

56.      CRs are the Chicago Police Department's records of investigations into complaints made by citizens against Chicago police officers. *Id.* at ¶ 3. After receiving a citizen complaint, "the [Chicago Police Department] generally creates records cataloguing the investigation into any officer's alleged misconduct." *Id.* The CR files encompass both the initial citizen's complaint as well as any documents created during the investigation of such complaint. *Id.*

57. The RLs, on the other hand, were compiled by the defendants, Chicago police officers and/or the City of Chicago, in two other cases: *Bond v. Utreras*, 04 C 2617, 2006 WL 695447 (N.D. Ill. 2006) and *Moore v. City of Chicago*, No. 07 C 5908 (N.D. Ill.). *Id.* at ¶ 4. "The *Bond* RLs identify police officers who accumulated the most misconduct complaints between 2001 and 2006." *Id.* "The *Moore* RLs identify officers who received more than five complaints from May 2002 to December 2008, as well as officers who were accused of excessive force more than five

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011001
PAGE 10 of 33

times during the same time period." *Id.* "These lists were retrieved from [the Chicago Police Department's] complaint register management system and were produced in response to court-ordered civil discovery in each case." *Id.*

58. Until the recent decision in *Kalven*, RL lists were protected from public disclosure under court order. *Id.*

59. On or about July 11, 2014, Chicago Mayor Rahm Emanuel announced that the City of Chicago will not attempt to appeal the Illinois Appellate Court's decision in *Kalven*, which has allowed the public and media to assess for the first time the quality (or lack thereof) of internal Chicago police investigations into their own officers' alleged misconduct (both on- and off-duty) and to identify groups of officers with patterns of complaints.

60. On or about July 29, 2014, the City of Chicago finally turned over the RL lists to the *Kalven* plaintiff, who in turn released the documents to the public.

61. The RL lists and other related documents revealed to the public, definitively and for the first time, that the CITY OF CHICAGO recently employed and continued to employ hundreds of police officers with long histories of citizen complaints of excessive force and other misconduct.

62. The RL lists and other related documents revealed to the public, definitively and for the first time, that the CITY OF CHICAGO, as a matter of practice and policy, routinely finds the vast majority of citizen complaints against police officers unfounded or unsubstantiated. It was also revealed that the CITY OF CHICAGO very rarely finds a complaint of excessive force or misconduct credible, and it was further revealed that it is an even rarer occurrence that an officer is disciplined after the complaint is deemed credible.

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 11 of 33

63. The RL lists and other related documents revealed to the public, definitively and for the first time, that the CITY OF CHICAGO, as a matter of practice and policy, allows its officers to act with impunity, both on and off duty, without the fear of any official consequence.

64.     Presently, and upon review of this significant additional information, Plaintiff has learned that Defendant CITY OF CHICAGO could be held liable for the shooting of Michael D. LaPorta under several additional theories of liability.

65.     Prior to the March 2014 *Kalven* decision and subsequent events, Plaintiff did not know his injuries were caused by Defendant City of Chicago's *de facto* and widespread customs, policies and practices that are department-wide, not just in relation to the CITY OF CHICAGO's handling of KELLY's misconduct.

66.     This newly released information, along with subsequent media investigations and reports, has recently revealed to Plaintiff, MICHAEL A. LAPORTA, that his injuries were caused by the CITY OF CHICAGO's widespread *de facto* custom, practice and policy of failing to investigate, discipline or otherwise hold accountable its police officers, whether on or off duty. This failure to discipline engendered the firm understanding among Chicago Police Officers, including KELLY, that CPD police officers are above the law and can act with impunity, without the fear of consequences. In that vein, Defendant CITY OF CHICAGO's persistent and widespread *de facto* custom, policy and practice was the driving force behind KELLY's conduct.

67.     Moreover, this recently released information, when taken in context with Defendant CITY OF CHICAGO's extensive efforts throughout this case to prevent Plaintiff from obtaining documents, as well as the City's actions to conceal, suppress, stall or hamper its and/or IPRA's investigation into KELLY's misconduct, has revealed to Plaintiff several other theories

of liability, namely, Plaintiff's 1983 *Monell* claim, § 1983 deprivation of right of access to the courts claim, and § 1983 and state law conspiracy claims.

68.     Accordingly, Plaintiff, MICHAEL A. LAPORTA, pleads that, pursuant to the discovery rule, because Plaintiff did not know of his injuries and their cause until the *Kalven* decision and subsequent events, Defendant CITY OF CHICAGO must be equitably estopped from raising the statute of limitations or statute of repose as an affirmative defense to Plaintiff's personal injury tort claims, pursuant to the common law discovery rule. In this case, the statute of limitations on Plaintiff's 1983 *Monell* claim, § 1983 deprivation of right of access to the courts claim, and § 1983 and state law conspiracy claims began to accrue in March 2014 or thereafter, when Plaintiff discovered his injuries and their cause.

<u>COUNT 1—WILLFUL AND WANTON</u>
*LaPorta v. City of Chicago*

69.     Plaintiff incorporates by reference all preceding paragraphs.

70.     That on and prior to January 12, 2010, and at all relevant times herein, Defendant, CITY OF CHICAGO, exercised control over the Chicago Police Department.

71.     That on and prior to January 12, 2010, and at all relevant times herein, the Chicago Police Department had in effect policies and procedures, rules, regulations, and general orders pertaining to the conduct of both on and off duty police officers.

72.     That on and prior to January 12, 2010, and at all relevant times herein, the CITY OF CHICAGO, had in effect policies and procedures, rules, regulations, and general orders pertaining to the conduct of both on and off duty officers, agents, representatives, and/or employees.

73.     That on and prior to January 12, 2010, and at all relevant times herein, PATRICK

KELLY (hereinafter "KELLY"), was employed by Defendant, CITY OF CHICAGO, as a police officer with the CITY OF CHICAGO Police Department.

74.    That prior to the shooting of Michael D. LaPorta on January 12, 2010, KELLY had at least 15 CRs filed against him for excessive force, neglect of duty, unbecoming conduct, illegal arrest, domestic altercation, and/or other misconduct while on-duty serving as a Chicago Police Officer.

75.    That on and prior to January 12, 2012, upon information and belief, KELLY, while utilizing his position as an officer under the color of law while off-duty KELLY acted dangerously and/or recklessly regarding the use and/or storage of his service weapon, putting members of the community in danger. (See Affidavit of Patricia LaPorta, attached hereto as Exhibit A).

76.    That on and prior to January 12, 2010, upon information and belief, KELLY, while utilizing his position as an officer under the color of law while off-duty, KELLY acted dangerously and recklessly, often carrying his service weapon while being intoxicated. (See Affidavit of Patricia LaPorta, Exh. A).

77.    That during the late evening hours of January 11, 2010, or the early morning hours of January 12, 2010, Michael D. LaPorta, accompanied KELLY to KELLY's residence.

78.    That at the time and place aforesaid, the service weapon belonging to and in the possession and control of KELLY, was discharged and a bullet therefrom struck Michael D. LaPorta, in the head.

79.    That at all times relevant herein, there existed a duty on the part of Defendant, CITY OF CHICAGO, to refrain from willful and wanton conduct with respect to the Michael D. LaPorta.

PAGE 14 of 33
2010-L-011901
11/5/2014 6:25 PM
ELECTRONICALLY FILED

80.     That at all times relevant herein, there existed a duty on the part of Defendant,

CITY OF CHICAGO,  to refrain from conduct that would likely and probably result in great

bodily harm and/or death to the Michael D. LaPorta.

81.     That at the aforesaid time and place, Defendant, CITY OF CHICAGO,  in

disregard of its duty, was then and there guilty of one or more of the following willful and

wanton acts or omissions:

     a.  With utter indifference and conscious disregard, Defendant, CITY OF
CHICAGO, allowed its officer, Kelly, to carry his service weapon on his person
while off-duty, even though Defendant, CITY OF CHICAGO, knew or should
have known of Kelly's dangerous propensities involving the use of his service
weapon while utilizing his position as an officer under the color of law while on
and off-duty and that the allowance of such would cause and could cause injury to
an individual such as Michael D. LaPorta;

     b.  With utter indifference and conscious disregard, Defendant, CITY OF
CHICAGO, allowed its officer, Kelly, to display his service weapon on his person
while off-duty, even though Defendant, CITY OF CHICAGO, knew or should
have known of Kelly's dangerous propensities involving the use of his service
weapon while utilizing his position as an officer under the color of law while on
and off-duty and that the allowance of such would cause and could cause injury to
an individual such as Michael D. LaPorta;

     c.  With utter indifference and conscious disregard, Defendant, CITY OF
CHICAGO, allowed its officer, Kelly, to possess his service weapon on his
person while off-duty, even though Defendant, CITY OF CHICAGO, knew or
should have known of Kelly's dangerous propensities involving the use of his
service weapon while utilizing his position as an officer under the color of law
while on and off-duty and that the allowance of such would cause and could cause
injury to an individual such as Michael D. LaPorta;

     d.  With utter indifference and conscious disregard, Defendant, CITY OF
CHICAGO, allowed its officer, Kelly, to fire his service weapon on his person
while off-duty, even though Defendant, CITY OF CHICAGO, knew or should
have known of Kelly's dangerous propensities involving the use of his service
weapon while utilizing his position as an officer under the color of law while on
and off-duty and that the allowance of such would cause and could cause injury to
an individual such as Michael D. LaPorta;

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 15 of 33

e. With utter indifference and conscious disregard, Defendant, CITY OF CHICAGO, failed to properly train its officer Kelly, with regards to the use of his service weapon off-duty, even though Defendant, CITY OF CHICAGO, knew or should have known of Kelly's dangerous propensities involving the use of his service weapon while utilizing his position as an officer under the color of law while on and off-duty and that the failure of such would cause and could cause injury to an individual such as Michael D. LaPorta;

f. With utter indifference and conscious disregard, Defendant, CITY OF CHICAGO, failed to properly train its officer Kelly, with regards to the storage of his service weapon, even though Defendant, CITY OF CHICAGO, knew or should have known of Kelly's dangerous propensities involving the use of his service weapon while utilizing his position as an officer under the color of law while on and off-duty and that the failure of such would cause and could cause injury to an individual such as Michael D. LaPorta;

g. With utter indifference and conscious disregard, Defendant, CITY OF CHICAGO, failed to supervise Kelly, with regards to the storage of his service weapon, even though Defendant, CITY OF CHICAGO, knew or should have known of Kelly's dangerous propensities involving the use of his service weapon while utilizing his position as an officer under the color of law while on and off-duty and that the failure of such would cause and could cause injury to an individual such as Michael D. LaPorta;

h. With utter indifference and conscious disregard, Defendant, CITY OF CHICAGO, failed to supervise Kelly, with regards to the use of service weapon, even though Defendant, CITY OF CHICAGO, knew or should have known of Kelly's dangerous propensities involving the use of his service weapon while utilizing his position as an officer under the color of law while on and off-duty and that the failure of such would cause and could cause injury to an individual such as Michael D. LaPorta;

i. Was otherwise willful and wanton.

82. That as a direct and proximate result of one or more of the foregoing willful and wanton acts or omissions on the part of the Defendant, CITY OF CHICAGO, KELLY's service weapon discharged and a bullet from said weapon struck Michael D. LaPorta, in the back of his head.

83. That as a direct and proximate result of one or more of the foregoing willful and wanton acts or omissions on the part of the Defendant, CITY OF CHICAGO, Michael D.

LaPorta, sustained serious and permanent injuries and suffered damages of a personal and pecuniary nature, including but not limited to pain and suffering, disability, disfigurement, emotional trauma, medical expenses, and lost wages.

WHEREFORE, Plaintiff, MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, prays for judgment against Defendant, CITY OF CHICAGO, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this Court deems appropriate and just.

### COUNT 2-DRAM SHOP ACT
*LaPorta v. Gordon Lounge, Inc., d/b/a "Brewbakers"*

84.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

85.     That on and prior to January 12, 2010 and all times relevant herein, Defendant, GORDON LOUNGE, INC., was a corporation licensed and organized under the laws of the State of Illinois and doing business at 10350 South Western Avenue in the City of Chicago, County of Cook, and State of Illinois, under the name "BREWBAKERS."

86.     That on and prior to January 12, 2010, and at all times relevant herein, Defendant, GORDON LOUNGE, INC., d/b/a BREWBAKERS (hereinafter "GORDON") by and through its agents, representatives, and/or employees, whether actual or apparent, owned, operated, maintained, and/or controlled a bar, cocktail lounge, lounge, and/or club, more commonly known as "Brewbakers", where it sold, served, and/or gave alcoholic beverages and/or liquor to the public.

87.     That as such, the aforesaid business was commonly known by the public to sell,

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-001901
PAGE 17 of 33

serve, and/or give alcoholic beverages and/or liquor to the public.

88.        That during the late evening hours of January 11, 2010 and/or early morning

hours of January 12, 2010, Michael D. LaPorta, visited the aforesaid location.

89.        That during the late evening hours of January 11, 2010 and/or early morning

hours of January 12, 2010,  KELLY, visited the aforesaid location.

90.        That at the time and place aforesaid, KELLY, consumed the alcoholic beverage(s)

and/or liquor sold, served, and/or given to him by and through agents, representatives, and/or

employees, whether actual or apparent, of Defendant, GORDON.

91.        That as a result of said consumption, KELLY, became inebriated.

92.        After consuming the alcoholic beverage(s) and/or liquor sold, served, and/or

given to him at the time and place aforesaid by Defendant, GORDON, KELLY, while still

intoxicated, went to his residence located at 10703 South Troy Street in the City of Chicago,

County of Cook, and State of Illinois.

93.        Michael D. LaPorta, accompanied KELLY, to 10703 South Troy Street, City of

Chicago, County of Cook, State of Illinois.

94.        That at the aforesaid time and place, after leaving the bar, cocktail lounge, lounge,

and/or club more commonly known as Brewbakers, owned, operated, maintained, and/or

controlled by Defendant, GORDON,  KELLY, while still intoxicated, discharged the firearm

then and there in his possession and control, and a bullet from said weapon struck Michael D.

LaPorta, in the back of his head.

95.        That as a direct and proximate result of the intoxication of KELLY, and/or the

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 18 of 33

actions and/or omissions of the inebriated KELLY, Michael D. LaPorta, sustained serious and permanent injuries and suffered damages of a personal and pecuniary nature, including pain and suffering, disability, disfigurement, and lost wages.

96.     That as a direct and proximate result of the intoxication of KELLY, and/or the actions and/or omissions of the inebriated KELLY, Michael D. LaPorta, sustained serious and permanent injuries and suffered damages.

97.     That Plaintiff brings his action in Count IV under 235 ILCS 5/6-21 *et seq.*, commonly known as the Dram Shop Act.

WHEREFORE, Plaintiff, MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, prays for judgment against Defendant, GORDON LOUNGE, INC., d/b/a BREWBAKERS, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this Court deems appropriate and just.

## COUNT 3—DRAM SHOP ACT
### *LaPorta v. Ruth G., Inc., d/b/a McNally's*

98.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

99.     That on and prior to January 12, 2010 and all times relevant herein, Defendant, RUTH G., INC., was a corporation licensed and organized under the laws of the State of Illinois and doing business at 10350 South Western Avenue in the City of Chicago, County of Cook, and State of Illinois, under the name McNALLY'S.

100.     That on and prior to January 12, 2010, and at all times relevant herein, Defendant,

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 19 of 33

RUTH G., INC., d/b/a McNALLY'S (hereinafter "RUTH G.") by and through its agents, representatives, and/or employees, whether actual or apparent, owned, operated, maintained, and/or controlled a bar, cocktail lounge, lounge, and/or club, more commonly known as "McNally's", where it sold, served, and/or gave alcoholic beverages and/or liquor to the public.

101.    That as such, the aforesaid business was commonly known by the public to sell, serve, and/or give alcoholic beverages and/or liquor to the public.

102.    That during the late evening hours of January 11, 2010 and/or early morning hours of January 12, 2010, Michael D. LaPorta, visited the aforesaid location.

103.    That during the late evening hours of January 11, 2010 and/or early morning hours of January 12, 2010, KELLY, visited the aforesaid location.

104.    That at the time and place aforesaid, KELLY, consumed the alcoholic beverage(s) and/or liquor sold, served, and/or given to him by and through agents, representatives, and/or employees, whether actual or apparent, of Defendant, RUTH G.

105.    That as a result of said consumption, KELLY, became inebriated.

106.    After consuming the alcoholic beverage(s) and/or liquor sold, served, and/or given to him at the time and place aforesaid by Defendant, RUTH G., KELLY, while still intoxicated, went to his residence located at 10703 South Troy Street in the City of Chicago, County of Cook, and State of Illinois.

107.    Michael D. LaPorta accompanied KELLY, to 10703 South Troy Street, City of Chicago, County of Cook, State of Illinois.

108.    That at the aforesaid time and place, after leaving the bar, cocktail lounge, lounge, and/or club more commonly known as McNally's, owned, operated, maintained, and/or controlled by Defendant, RUTH G., KELLY, while still intoxicated, discharged the firearm then

PAGE 20 of 33
2010-L-011901
11/5/2014 6:25 PM
ELECTRONICALLY FILED

and there in his possession and control, and a bullet from said weapon struck Michael D. LaPorta in the back of his head.

109.     That as a direct and proximate result of the intoxication of KELLY, and/or the actions and/or omissions of the inebriated KELLY, Michael D. LaPorta sustained serious and permanent injuries and suffered damages of a personal and pecuniary nature, including pain and suffering, disability, disfigurement, and lost wages.

110.     That as a direct and proximate result of the intoxication of KELLY, and/or the actions and/or omissions of the inebriated KELLY, Michael D. LaPorta sustained serious and permanent injuries and suffered damages.

111.     That Plaintiff brings his action in Count V under 235 ILCS 5/6-21 *et seq.*, commonly known as the Dram Shop Act.

WHEREFORE, Plaintiff, MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, prays for judgment against Defendant, RUTH G., INC., d/b/a McNALLY'S, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this Court deems appropriate and just.

### COUNT 4—VIOLATION OF 42 USC §1983
#### (Deprivation of Right of Access to the Courts)
#### *LaPorta v. City of Chicago*

112.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

113.     The CITY OF CHICAGO, IPRA and KELLY, individually, jointly, and in conspiracy among themselves and with their named and unnamed co-conspirators, and acting under the color of law, attempted to cover-up and/or suppress KELLY's and/or the CITY OF

CHICAGO's liability for the January 11/12, 2010 incident where Michael D. LaPorta was shot in the head at KELLY'S residence.

114. As described more fully above, Defendant CITY OF CHICAGO covered up and/or suppressed KELLY's and the CITY's liability by making numerous efforts to conceal, suppress, and/or stall its investigation into the January 11/12, 2010 incident, as well as conceal, suppress, and/or stall its finding from that investigation, forcing Plaintiff to repeatedly file Motions to Compel Evidence and Motions for Sanctions.

115. Among numerous other tactics to conceal, suppress, and/or stall its investigation and corresponding liability into the January 11/12, 2010 incident, Defendant CITY OF CHICAGO also initially revealed that KELLY had 10 CRs prior to the shooting of Plaintiff Michael D. LaPorta. As discovery progressed, Defendant CITY OF CHICAGO later disclosed that KELLY had, in fact, 15 CRs prior to the shooting incident involving Plaintiff.

116. Whether it's through stalling internal investigations, declining or rejecting FOIA requests, discovery violations, or forcing Plaintiff to repeatedly submit motions to compel evidence and motions for sanctions, Defendant CITY OF CHICAGO has taken numerous affirmative acts calculated to cover-up and/or suppress KELLY's and/or the CITY OF CHICAGO's liability into the January 11/12, 2010 incident.

117. In each of the years since the filing of this Complaint at Law in October 2010, Defendant CITY OF CHICAGO has misrepresented and/or under-reported the true nature and history of police misconduct committed by KELLY and other Chicago police officers.

118. Defendant CITY OF CHICAGO has had and presently does have a financial incentive to misrepresent and hide the true nature and scope of KELLY and other Chicago police

officers' conduct and what Defendant CITY OF CHICAGO knew or should have known about KELLY's history of misconduct as he continued to work for the CITY OF CHICAGO.

119.     After the March 2014 *Kalven* decision, the subsequent July 2014 CITY OF CHICAGO public disclosure of information, and the related media investigations and reports, it became apparent that Defendant CITY OF CHICAGO was using a strategy designed to prevent any public or judicial scrutiny of its practices – and to prevent its practices and their implications from ever becoming visible.

120.     This official cover-up was rooted in a concerted and unremitting abuse of power and authority, and it was undertaken with the intent or knowledge that it would obstruct the legitimate efforts of Plaintiff to vindicate Michael D. LaPorta's debilitating shooting through judicial redress, or with reckless disregard for same. In so doing, Defendant CITY OF CHICAGO violated Plaintiff's right of access to the courts, in violation of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States.

121.     Should the Court conclude that Plaintiff's claims against Defendant CITY OF CHICAGO in Counts 4, 5, 6 and/or 7 of this Fifth Amended Complaint are time-barred, then, as a direct and proximate result of the violations of the Defendants named in this Count, Plaintiff's right of access to the courts for the purpose of seeking redress against the CITY OF CHICAGO and others has been denied and deprived.

WHEREFORE, Plaintiff, MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, prays for judgment against Defendant, CITY OF CHICAGO, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this Court deems appropriate and just.

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 23 of 33

<u>COUNT 5—VIOLATION OF 42 USC §1983</u>
(*Monell* Claim – Policy, Practice and/or Custom)
*LaPorta v. City of Chicago*

122.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

123.    The actions of Defendant, CITY OF CHICAGO, and KELLY, were done pursuant to one or more of the following *de facto* policies, practices and/or customs of the CITY OF CHICAGO that are so pervasive that they carry the force of law.

124.    Specifically, the CITY of CHICAGO has a *de facto* policy, practice and/or custom of concealing and/or suppressing officer misconduct (both on duty and off duty misconduct), including the use of unlawful force. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct; failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence; failure to promptly interview the suspected officer; failure to properly and sufficiently discipline an officer, even where the complaint is sustained; fabrication of exculpatory evidence or destruction of evidence; and failure to initiate prompt disciplinary procedures related to the alleged misconduct, even when the allegation of misconduct is so obviously true.

125.    Likewise, the CITY of CHICAGO has a *de facto* policy, practice and/or custom of investigating complaints against off duty officers differently than complaints against other citizens. This "double standard" regarding allegations of misconduct against off-duty officers includes, but is not limited to: all of the above acts and/or omissions listed in the paragraph above; limiting charges against off-duty officers to misdemeanors (or taking measures to get the charges dismissed), regardless of the severity or outrageousness of the alleged misconduct; and

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 24 of 33

suppressing felony review of charges against off-duty officers, regardless of the severity or outrageousness of the alleged misconduct.

126.     Likewise, the CITY of CHICAGO has a *de facto* policy, practice and/or custom of failing to maintain accurate and complete records of complaints and investigations of misconduct.

127.     Likewise, the CITY of CHICAGO has a *de facto* policy practice and/or custom of hiring and retaining unqualified officers, and failing to properly train, monitor and/or supervise its police officers.

128.     Finally, the CITY of CHICAGO has a *de facto* policy, practice and/or custom of a "code of silence." This code is an implicit understanding between and among members of the CPD resulting in a refusal or failure to report instances of misconduct of which they are aware, including the use of unlawful force, despite their obligation to do so as sworn peace officers. This includes police officers who remain silent or give false or misleading information during official investigations into allegations of a fellow officer related to misconduct that occurred on duty or off duty in order to protect themselves or their fellow officers from discipline, criminal prosecution or civil liability.

129.     Individually and collectively, the above described *de facto* policies, practices and/or customs of the CITY OF CHICAGO proximately result in the culture and endemic attitude among members of the CPD, including Officer KELLY, that they may engage in misconduct against the citizenry with impunity, and without fear of official consequence; they consider themselves "above the law."

130.     The aforementioned *de facto* policies, practices and/or customs of the CITY OF CHICAGO, individually and collectively, have been maintained and/or implemented with utter

indifference by Defendant CITY of CHICAGO and has or have encouraged and/or motivated Officer KELLY to commit the aforesaid wrongful acts against the Plaintiff Michael D. LaPorta, and therefore acted as the direct and proximate cause of the injuries sustained by the Plaintiff.

131.    The above acts and/or omissions of the CITY of CHICAGO violated the Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

132.    As a direct result of the facts and allegations set forth above, Plaintiff Michael D. LaPorta has suffered, and will in the future continue to suffer, permanent injuries of a personal and pecuniary nature.

WHEREFORE, Plaintiff, MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, prays for judgment against Defendant, CITY OF CHICAGO, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this Court deems appropriate and just.

### COUNT 6—VIOLATION OF 42 USC §1983
**(Conspiracy to Deprive Plaintiff of his Right of Access to the Courts)**
*LaPorta v. City of Chicago*

133.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

134.    The CITY OF CHICAGO, IPRA and KELLY, individually, jointly, and in conspiracy among themselves and with their named and unnamed co-conspirators, and acting under the color of law, attempted to cover-up and/or suppress KELLY's and/or the CITY OF CHICAGO's liability into the January 11/12, 2010 incident where Michael D. LaPorta was shot in the head at KELLY'S residence.

135.    As described more fully above, Defendant CITY OF CHICAGO did this by

making numerous efforts to conceal, suppress, and/or stall its investigation into the January 11/12, 2010 incident, as well as conceal, suppress, and/or stall its finding from that investigation, forcing Plaintiff to repeatedly file Motions to Compel Evidence and Motions for Sanctions.

136.    Among numerous other tactics to conceal, suppress, and/or stall its investigation and corresponding liability into the January 11/12, 2010 incident, Defendant CITY OF CHICAGO also initially revealed that KELLY had 10 CRs prior to the shooting of Plaintiff Michael D. LaPorta. As discovery progressed, Defendant CITY OF CHICAGO later disclosed that KELLY had, in fact, 15 CRs prior to the shooting incident involving Plaintiff.

137.    Whether it's through stalling internal investigations, declining or rejecting FOIA requests, discovery violations, or forcing Plaintiff to repeatedly submit motions to compel evidence, Defendant CITY OF CHICAGO has taken numerous affirmative acts calculated to cover-up and/or suppress the CITY OF CHICAGO's liability into the January 11/12, 2010 incident.

138.    In each of the years since the filing of this Complaint at Law in October 2010, Defendant CITY OF CHICAGO has misrepresented and/or under-reported the true nature and history of police misconduct committed by KELLY and other Chicago police officers.

139.    Defendant CITY OF CHICAGO has had and presently does have a financial incentive to misrepresent and hide the true nature and scope of KELLY and other Chicago police officers' conduct and what Defendant CITY OF CHICAGO knew or should have known about KELLY's history of misconduct as he continued to work for the CITY OF CHICAGO.

140.    After the March 2014 *Kalven* decision, the subsequent July 2014 CITY OF CHICAGO public disclosure of information, and the related media investigations and reports, it became apparent that Defendant CITY OF CHICAGO was using a strategy designed to prevent

any public or judicial scrutiny of its practices – and to prevent its practices and their implications from ever becoming visible.

141. This official cover-up was rooted in a concerted and unremitting abuse of power and authority, and it was undertaken, *inter alia*, with the intent or knowledge that it would obstruct the legitimate efforts of Plaintiff to vindicate Michael D. LaPorta's debilitating shooting through judicial redress, or with reckless disregard for same. In so doing, Defendant CITY OF CHICAGO violated Plaintiff's right of access to the courts, in violation of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States.

142. Specifically, Defendant CITY OF CHICAGO's conduct, as described above, violated the rights of the Plaintiff to equal protection of the laws as guaranteed under the Fourteenth Amendment to the United States Constitution, and caused the Plaintiff to suffer damages, including personal and pecuniary injuries.

143. Should the Court conclude that Plaintiff's claims against Defendant CITY OF CHICAGO in Counts 4, 5, 6 and/or 7 of this Fifth Amended Complaint are time-barred, then, as a direct and proximate result of the violations of the Defendants named in this Count, Plaintiff's right of access to the courts for the purpose of seeking redress against the CITY OF CHICAGO and others has been denied and deprived.

WHEREFORE, Plaintiff, MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, prays for judgment against Defendant, CITY OF CHICAGO, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this Court deems appropriate and just.

### COUNT 7—CIVIL CONSPIRACY (State Law)

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 28 of 33

*LaPorta v. City of Chicago*

144.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

145.     The CITY OF CHICAGO, IPRA and/or KELLY, acting under the color of law, individually, jointly, and in conspiracy among themselves and with their named and unnamed co-conspirators, attempted to cover-up and/or suppress the CITY OF CHICAGO's liability into the January 11/12, 2010 incident where Michael D. LaPorta was shot in the head.

146.     As described more fully above, Defendant CITY OF CHICAGO did this by making numerous efforts to conceal, suppress, and/or stall its investigation into the January 11, 2010 incident, as well as conceal, suppress, and/or stall its finding from that investigation, forcing Plaintiff to repeatedly file Motions to Compel Evidence and Motions for Sanctions.

147.     Among numerous other tactics to conceal, suppress, and/or stall its investigation and corresponding liability into the January 11/12, 2010 incident, Defendant CITY OF CHICAGO also initially revealed that KELLY had 10 CRs prior to the shooting of Plaintiff Michael D. LaPorta. As discovery progressed, Defendant CITY OF CHICAGO later disclosed that KELLY had, in fact, 15 CRs prior to the shooting incident involving Plaintiff.

148.     Whether it's through stalling internal investigations, declining or rejecting FOIA requests, discovery violations, or forcing Plaintiff to repeatedly submit motions to compel evidence, Defendant CITY OF CHICAGO has taken numerous affirmative acts calculated to cover-up and/or suppress the CITY OF CHICAGO's liability into the January 11/12, 2010 incident.

149.     In each of the years since the filing of this Complaint at Law in October 2010, Defendant CITY OF CHICAGO has misrepresented and/or under-reported the true nature and history of police misconduct committed by KELLY and other Chicago police officers. Defendant

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 29 of 33

CITY OF CHICAGO has had and presently does have a financial incentive to misrepresent and hide the true nature and scope of KELLY and other Chicago police officers' conduct and what Defendant CITY OF CHICAGO knew or should have known about KELLY's history of misconduct as he continued to work for the CITY OF CHICAGO.

150.     After the March 2014 *Kalven* decision, the subsequent July 2014 CITY OF CHICAGO public disclosure of information, and the related media investigations and reports, it became apparent that Defendant CITY OF CHICAGO was using a strategy designed to prevent any public or judicial scrutiny of its practices – and to prevent its practices and their implications from ever becoming visible.

151.     This official cover-up was rooted in a concerted and unremitting abuse of power and authority, and it was undertaken with the intent or knowledge that it would obstruct the legitimate efforts of Plaintiff to vindicate Michael D. LaPorta's debilitating shooting through judicial redress, or with reckless disregard or indifference for same.

152.     This extreme and outrageous conspiratorial conduct was with the intent, and/or had the effect of, directly and proximately causing Plaintiff severe emotional distress, and the CITY OF CHICAGO, KELLY, and/or IPRA knew, or should have known, that their conduct would cause or be likely to cause Plaintiff severe emotional distress.

153.     As a direct and proximate result of this conspiracy, Plaintiff was injured, and has experienced, and continues to experience, severe emotional distress.

154.     Moreover, should the Court conclude that Plaintiff's claims against Defendant CITY OF CHICAGO in Counts 4, 5, 6 and 7 of this Fifth Amended Complaint are time-barred, then, as a direct and proximate result of the violations of the Defendants named in this Count,

Plaintiff's right of access to the courts for the purpose of seeking redress against the CITY OF CHICAGO and others has been denied and deprived.

WHEREFORE, Plaintiff, MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, prays for judgment against Defendant, CITY OF CHICAGO, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs, with interest, of bringing this action, and for such other further relief this Court deems appropriate and just.

Respectfully Submitted,

**ROMANUCCI & BLANDIN, LLC and SALVATO & O'TOOLE**

One of Plaintiff's Attorneys

Antonio M. Romanucci
Angela P. Kurtz
**ROMANUCCI & BLANDIN**
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000 *telephone*
(312) 458-1004 *facsimile*
Attorney No.: 35785

Carl Salvato
**SALVATO & O'TOOLE**
53 West Jackson Blvd., Suite 1750
Chicago, IL 60604
(312) 583-9500
(312) 583-1910 *facsimile*

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 31 of 33

### AFFIDAVIT OF PATRICIA LAPORTA

Affiant, PATRICIA LAPORTA, on oath, states that, if called to testify before this Court, she would be competent to do so and would testify that:

1. That her son, Michael D. LaPorta, suffered a gunshot wound to the head in the late evening hours of January 11, 2010, or the early morning hours of January 12, 2010.

2. That to date, as a result of the aforementioned shooting, Michael D. LaPorta is paralyzed, confined to a wheelchair, has limited vocabulary and is currently participating in rehabilitation.

3. That prior to the shooting of Michael D. LaPorta, Patrick Kelly would openly brag about beating up men and women, while working as a Chicago Police officer and would do so without being punished or reprimanded.

4. That prior to the shooting of Michael D. LaPorta, Kelly drank heavily and had a reputation in the community for being an alcoholic.

5. That prior to the shooting of Michael D. LaPorta, Kelly told Mrs. LaPorta that he physically and/or assaulted a woman while working as a Chicago Police Department Officer.

6. That prior to the shooting of Michael D. LaPorta, Kelly bragged to Mrs. LaPorta about attending a motor vehicle test for the Chicago Police Department, while being very intoxicated and as a result, injured his foot.

7. That prior to the shooting of Michael D. LaPorta, Kelly fired his service weapon in his apartment while off-duty.

8. That prior to the shooting of Michael D. LaPorta, Kelly frequently carried his service weapon into bars and while he was intoxicated.

PLAINTIFF'S
EXHIBIT
A


**Exhibit A (Page 33 of 35)**

9.     That prior to the shooting of Michael D. LaPorta, Kelly unholstered his service weapon and then left it at a Chicago bar after a night of drinking and had to return to the same bar the following morning to retrieve it.

10.     That prior to the shooting of Michael D. LaPorta, Kelly often went unpunished by the City of Chicago Police Department both on duty and off duty for acts of misconduct.

FURTHER AFFIANT SAYETH NOT.

*Patricia LaPorta*  9/28/12

Patricia LaPorta

PAGE 33 of 33
1901101-1-0102
11/5/2014 6:25 PM
ELECTRONICALLY FILED

**Exhibit A (Page 34 of 35)**

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
CALENDAR: A
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 10 L 11901 |
| CITY OF CHICAGO, a municipal corporation; GORDON LOUNGE, INC., d/b/a BREWBAKERS; and RUTH G., INC., d/b/a McNALLY'S, | ) ) ) ) ) | |
| Defendants. | ) | |

### NOTICE OF FILING

TO:     *See Service List*

PLEASE TAKE NOTICE that on **November 5, 2014**, we have filed with the Clerk of the Circuit Court of Cook County, Illinois, **Plaintiff's Fifth Amended Complaint at Law,** a copy of which is attached hereto.

Angela P. Kurtz
ROMANUCCI & BLANDIN
321 North Clark Street - Suite 900
Chicago, Illinois 60654
312-458-1000
312-458-1004 Fax
Attorney No. 35875

### PROOF OF SERVICE

I, the undersigned, on oath, subject to penalty of perjury, state that I served this notice by mailing a copy to all parties shown above at their respective addresses by depositing same in the U.S. Mail at 321 North Clark Street, Chicago, Illinois, at 5:00 p.m. on November 6, 2014 with postage prepaid.

[X]     Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct.

### SERVICE LIST
### LaPorta v. City of Chicago, et. al.
### 10 L 11901

Carl Salvato
SALVATO & O'TOOLE
53 West Jackson Blvd.
Suite 1750
Chicago, IL 60604
(312) 583-9500
(312) 583-1910 *facsimile*
***Additional Counsel for Plaintiff***

Howard Levine
Assistant Corporation Counsel
30 North LaSalle Street
Room 800
Chicago, IL 60602
(312) 744-6991
(312) 744-1974 *facsimile*
Howard.Levine@cityofchicago.org
***Counsel for City of Chicago***

Daniel P. Costello
DANIEL P. COSTELLO & ASSOC.
221 North LaSalle Street
Suite 1300
Chicago, IL 60601
(312) 850-2651
(888)465-8067 *facsimile*
***Counsel for McNally's, Cummings***

Robert Burke
HEINEKE & BURKE
2 North LaSalle Street
Suite 1110
Chicago, IL 60602
(312) 580-7300
(312) 580-9200 *facsimile*
***Counsel for Gordon Lounge***

ELECTRONICALLY FILED
11/5/2014 6:25 PM
2010-L-011901
PAGE 2 of 2