IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. LaPORTA, as Guardian of the Estate and Person of Michael D. LaPorta,<br><br>           Plaintiff,<br><br>    v.<br><br>CITY OF CHICAGO, *et al.*,<br><br>           Defendants. | Case No. 14 C 9665<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

This case arose in the early morning hours of January 12, 2010, when, after a night of heavy drinking, an off-duty police officer's firearm discharged a bullet into the back of Plaintiff Michael D. LaPorta's ("LaPorta") head. LaPorta's seven-count Complaint alleges that Defendant City of Chicago (the "City") engaged in willful and wanton conduct, violated 42 U.S.C. § 1983, and committed civil conspiracy, and that two Defendant bar owners violated Illinois' Dram Shop Act. Before the Court is the City's Rule 12(b)(6) Motion to Dismiss Counts I, IV, V, VI, and VII [ECF No. 24]. For the reasons stated herein, the City's Motion is granted in part and denied in part.

## I.  BACKGROUND

The factual allegations contained in LaPorta's Complaint are briefly summarized below.

Late in the evening, on January 11, 2010, LaPorta and Patrick Kelly, a Chicago Police Department ("CPD") officer, visited a bar called McNally's on the South Side of Chicago. There, they joined several other CPD officers, who were Officer Kelly's friends and coworkers.  Drinking ensued, and Officer Kelly became intoxicated.  Officer Kelly, LaPorta, and several others then traveled to another bar, Brewbakers, where more alcohol was consumed.

By early morning, LaPorta and Officer Kelly found themselves alone at Officer Kelly's residence.  What happened next is as blurry as the alcohol-fueled evening the Complaint describes.  LaPorta alleges that "Kelly's service weapon discharged and a bullet from said weapon struck Michael D. LaPorta, in the back of the head." (Compl., ECF No. 1, ¶ 38). How the gun went off is unclear.

At 4:30 a.m., a CPD officer arrived at Officer Kelly's residence in response to a 9-1-1 call.  A belligerent Officer Kelly began to take swings at the responding officer.  Other officers soon arrived on the scene, and Officer Kelly was subsequently charged with assault, although that charge was

later dismissed with prejudice. According to LaPorta, Officer Kelly has a long history of complaints for excessive force and other misconduct on and off the job. From 2005 to 2009, 15 Complaint Registers ("CR") were filed against him.

On October 18, 2010, Michael A. LaPorta, as guardian of Michael D. LaPorta, filed suit in the Circuit Court of Cook County. Since filing suit, LaPorta alleges that the City has taken numerous steps to hide information from him and prevent him from discovering his claims. This apparently caused LaPorta to file multiple motions to compel and motions for sanctions in the state court action. Shortly after filing suit, LaPorta requested documents from the Independent Police Review Authority ("IPRA"), a division of the City of Chicago that investigates allegations of police misconduct. He did not receive any documents until more than two years later, and alleges that he is still awaiting a response to his request to the City for additional information regarding Officer Kelly's IPRA file. The City originally misreported that Officer Kelly had only received ten CRs prior to the LaPorta incident, when, in fact, he had received 15.

On March 10, 2014, the Illinois Appellate Court issued a decision in *Kalven v. City of Chicago,* 7 N.E.3d 741 (Ill. App. Ct. 2014), holding that CRs and Repeater Lists ("RL"), which

identify CPD officers who have amassed the most complaints, are not exempt from disclosure under the Freedom of Information Act. LaPorta claims that this decision, along with the City's efforts to frustrate his attempts to obtain information, revealed several additional theories of liability against the City. On November 5, 2014, Plaintiff filed his Fifth Amended Complaint (the "Complaint"), which included new *Monell,* right of access, and conspiracy claims. On December 3, 2014, the action was timely removed to the Northern District of Illinois.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's allegations as true, and view them in the light most favorable to the plaintiff. *Meriwether v. Faulkner,* 821 F.2d 408, 410 (7th Cir. 1987). A court need not accept as true "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere

- 4 -

conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted).

### III.  ANALYSIS

The Court examines LaPorta's claims against the City in the order in which they are pleaded, except for his right of access claim, which the Court addresses last.

#### A.  Count I — Willful and Wanton Conduct

Count I alleges that the City engaged in willful and wanton conduct when it allowed Officer Kelly to carry his service weapon while off duty and failed to train or supervise him regarding weapon storage, despite the City's knowledge of Officer Kelly's "dangerous propensities." (Compl. ¶ 81.)  The City argues that LaPorta's allegations are too conclusory to state a claim, and alternatively, are barred by Sections 4-102 and 2-109 of the Illinois Tort Immunity Act.

The Illinois Tort Immunity Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1-210.  Willful and wanton conduct is distinct from ordinary negligence. *Oravek v. Cmty. Sch. Dist. 146,* 637

N.E.2d 554, 557 (Ill. App. Ct. 1994). "To sufficiently plead willful and wanton conduct, a plaintiff must allege not only duty, breach, and proximate cause, but also that the defendant engaged in a course of action that showed a deliberate intention to harm or an utter indifference to or conscious disregard for the plaintiff's welfare." *Floyd v. Rockford Park Dist.,* 823 N.E.2d 1004, 1009 (Ill. App. Ct. 2005) (internal citations omitted). A municipality has an independent duty, as an employer, "to refrain from hiring or retaining an employee who is a threat to third persons to whom the employee is exposed." *Bates v. Doria,* 502 N.E.2d 454, 458 (Ill. App. Ct. 1986).

Here, LaPorta has plausibly alleged a claim for willful and wanton conduct. First, LaPorta alleges that the City had a duty not to retain Officer Kelly — and permit him to carry his service weapon while off duty — in light of Officer Kelly's known history of alleged misconduct. In a four-year timeframe, Officer Kelly amassed 15 CRs alleging excessive force and other wrongdoing. Although only two of the CRs involved off-duty conduct, and none dealt with handling or storing a weapon, the Court finds that the City's knowledge of these complaints could give rise to a duty not to retain Officer Kelly.

Second, LaPorta alleges that the City breached its duty, when "with utter indifference and conscious disregard," it permitted Officer Kelly to possess his service weapon while off duty and failed to train or supervise him regarding storage of the weapon. (Compl. ¶ 81.) While the Complaint does not contain specific facts as to what training (if any) the City provided, it shows that Officer Kelly was an active CPD officer who possessed his service weapon while off duty, despite the fact that more than a dozen complaints had been lodged against him in a short span of time. Finally, LaPorta alleges that the City's retention of Officer Kelly was the direct and proximate cause of his injuries. (*Id.* ¶ 82.) At the motion to dismiss stage, the Court finds these facts sufficient to establish that the City was indifferent toward its duty not to retain officers who pose a risk to third persons, and that this indifference caused LaPorta's injuries.

The City alternatively argues that Sections 4-102 and 2-109 of the Illinois Tort Immunity Act (the "Act") bar LaPorta's claim. Section 4-102 provides that public entities cannot be held liable "for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4-102.

Section 4-102 mirrors the "public duty rule," under which a municipality cannot be held liable for its failure to provide routine governmental services, such as police and fire protection, absent a special duty to a particular individual. *Harinek v. 161 N. Clark St. Ltd. P'ship,* 692 N.E.2d 1177, 1183 (Ill. 1998).

Here, LaPorta's claim is not that the City breached its duty to him by failing to provide adequate police protection. Rather, LaPorta alleges that the City breached its duty by retaining an officer who allegedly posed a threat to the public. A city's duty to "to refrain from hiring or retaining an employee who is a threat to third persons to whom the employee is exposed" exists independently of its duty to provide police protection. *See, Bates,* 502 N.E.2d at 458. For this reason, Section 4-102 of the Act does not bar LaPorta's claim.

Section 2-109 of the Act provides that a public entity cannot be held liable "for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. The City argues that because Officer Kelly has settled with LaPorta, he cannot be held liable, and therefore, the City cannot be held liable either. However, the release of an individual defendant through settlement does

not automatically trigger a public entity's immunity under Section 2-109. *See, Whitney v. City of Chicago,* 508 N.E.2d 293, 297 (Ill. App. Ct. 1987) (allowing negligent hiring claim to proceed against city, even though individual defendants had settled). Without an actual finding of non-liability, the Court cannot conclude that the settlement with Officer Kelly results in immunity for the City under Section 2-109.

The City's final contention is that the Complaint contains no explicit allegations regarding Officer Kelly's actions the night of the incident that conceivably could give rise to his, and thus the City's, liability. (*See, e.g.,* Compl. ¶ 38 (alleging that "Kelly's service weapon discharged"). The wording of the Complaint is indeed unusual. However, when taken together, the facts alleged — two men are alone at a residence when a bullet discharges into the back of one man's head — could plausibly give rise to Officer Kelly's liability. The Court therefore concludes that Section 2-109 of the Act does not bar LaPorta's claim and denies the City's Motion to Dismiss Count I.

## B. Count V — *Monell* Claim

In Count V, LaPorta alleges that the City's practice of concealing and condoning officer misconduct deprived him of his Fourteenth Amendment rights. To state a claim against the

City under *Monell,* LaPorta must show that: "(1) [he] suffered a deprivation of a constitutional right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority, that (3) proximately caused [his] constitutional injuries." *Obrycka v. City of Chicago,* No. 07 C 2372, 2012 WL 601810, at *6 (N.D. Ill. Feb. 23, 2012) (citing *Ovadal v. City of Madison,* 416 F.3d 531, 535 (7th Cir. 2005)). The plaintiff must show causation by alleging that the official custom, policy, or practice is the "moving force" behind the alleged injury. *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 306 (7th Cir. 2010).

The City argues that LaPorta fails to allege any of the three elements required to state a *Monell* claim. First, the City argues that LaPorta has failed to allege a constitutional injury because Plaintiff does not specifically state that Officer Kelly shot him. LaPorta counters that the constitutional right at stake is his Fourteenth Amendment right to bodily integrity, and that this right was violated when Officer Kelly's weapon discharged into the back of his head. (*See,* Compl. ¶ 38.)

Here, Plaintiff has plausibly alleged a violation of his constitutional rights. The Fourteenth Amendment protects an

individual's right to bodily integrity, "and is infringed by a serious, as distinct from a nominal or trivial, battery." *Alexander v. DeAngelo,* 329 F.3d 912, 916 (7th Cir. 2003). Without question, Plaintiff has alleged a serious injury resulting in disability, (Compl. ¶¶ 1, 39), which rises above a trivial battery. Although the Complaint does not state explicitly that Officer Kelly shot LaPorta, it alleges that "Kelly's service weapon discharged" while Kelly and LaPorta were alone at Kelly's residence, and that a bullet from the weapon struck LaPorta in the back of the head. (*Id.* ¶ 38.) The Court finds this allegation sufficient to establish a violation of LaPorta's constitutionally protected right to bodily integrity.

Second, the City argues that LaPorta fails to allege that the City has engaged in any widespread policy or practice that may have caused the incident. LaPorta alleges practices including: (1) concealing officer misconduct, (2) applying lenient standards to complaints against off-duty officers, (3) failing to maintain accurate records of officer misconduct, (4) hiring and retaining unqualified officers, and (5) permitting a "code of silence" within the CPD. (Compl. ¶¶ 124–128.) The City argues that these allegations are too conclusory and speculative to survive a motion to dismiss.

The Court disagrees. The Complaint states that CRs and RLs made available after *Kalven* revealed that officer misconduct was prevalent within the CPD, but largely condoned, and to the extent possible, hidden from the public. Officer Kelly, with 15 CRs in four years, exemplifies these alleged practices. Accepting the facts of the Complaint as true, the Court finds that LaPorta has plausibly alleged a widespread practice of "failing to investigate, discipline, or otherwise hold accountable its police officers." (*Id.* ¶ 66.)

Third, the City argues that LaPorta fails to show that the City's policies caused his constitutional injury. Plaintiff states that the City's policy of tolerating police misconduct and failing to hold officers accountable for their actions "engendered the firm understanding among Chicago Police Officers, including Kelly, that CPD police officers are above the law and can act with impunity. . . . In that vein, [the City's widespread practice] was the driving force behind Kelly's conduct." (*Id.*)

To show that a municipal policy violated a constitutional right, a plaintiff must provide "a direct causal link" between the alleged policy or practice and the constitutional violation. *Obrycka,* 2012 WL 601810, at *9. In *Obrycka,* a bartender alleged that the City's policy of concealing or

suppressing investigations of police misconduct was the "moving force" behind her constitutional injury — the deprivation of her right to bodily integrity, which occurred when an off-duty Chicago police officer brutally beat her. *Id.* Before the incident, the officer had been physically and verbally abusive with the bartender and other bar patrons, and had stated "nobody tells me what to do," suggesting that the officer "thought he was impervious to the consequences of his misconduct." *Id.* The Court found this evidence sufficient to support a connection between the City's policy and the bartender's injury. *Id.*

Here, LaPorta's has alleged facts supporting a connection between the City's policy of condoning officer misconduct and his constitutional injury. Before the incident, at least 15 CRs had been filed against Officer Kelly alleging excessive force and other misconduct. (Compl. ¶¶ 13–27.) After the incident, Kelly was "belligerent and very irate" and began "swinging his arms" at the responding officer. (*Id.* ¶¶ 41–42.) These facts support LaPorta's contention that the City's policy engendered in Officer Kelly the understanding "that CPD officers are above the law and can act with impunity." (*Id.* ¶ 66.)

The City also argues that LaPorta cannot succeed on his *Monell* claim because his allegations show that Officer Kelly was off duty when his firearm discharged, and therefore Officer Kelly was not acting under the color of law. In *Othman,* the case the City relies on, the court dismissed a *Monell* claim where plaintiffs failed to show that a police officer was acting under the color of law at the time of a shooting. *See, Othman v. City of Chicago,* No. 11 C 05777, 2012 WL 2929954, at *3 (N.D. Ill. July 18, 2012). However, *Othman* did not address the issue presented here — whether an official custom, policy, or practice caused a plaintiff's constitutional injury. *See, id.*

Where a plaintiff alleges that municipal policies are the "moving force" behind a constitutional injury, the municipality itself is the state actor. *See, Gibson v. City of Chicago,* 910 F.2d 1510, 1519–23 (7th Cir. 1990) (reversing judgment in favor of city where plaintiff had plausibly alleged that "the [c]ity's policy of allowing a deranged police officer to retain his service revolver" caused his injury, even though the police officer who shot plaintiff was on medical leave); *Obrycka,* 2012 WL 601810, at *5–6 (denying city's motion for summary judgment where plaintiff established a link between the city's policy and her injury, even though

the police officer who beat her was off duty); *Garcia v. City of Chicago,* No. 01 C 8945, 2003 WL 1715621, at *5 (N.D. Ill. Mar. 20, 2003) (explaining that whether officer acted under color of law did not impact issue of city's liability). Because LaPorta has plausibly alleged that official City policies caused his injuries, he need not establish that Officer Kelly was acting under the color of law to survive the City's Motion to Dismiss. The Court finds that LaPorta has adequately pleaded the constitutional violation, municipal policy or practice, and causation necessary to state a claim under *Monell*.

Although the City initially devoted much of its brief to arguing that Plaintiff's *Monell* claim and related right of access and conspiracy claims are time barred, it now concedes that LaPorta has pleaded sufficient facts to establish that he suffers from a legal disability that could toll the statute of limitations. Therefore, the Court will not address the City's statute of limitations defense at this time, although the City may assert this defense later.

### C.  Counts VI and VII — Conspiracy

Counts VI and VII of LaPorta's Complaint allege a conspiracy under § 1983 and state law in which the City, IPRA, and Officer Kelly attempted to cover up the City's liability

for LaPorta's injuries. For instance, LaPorta alleges that the City misrepresented the number of CRs against Officer Kelly, and failed to respond to numerous discovery requests, some of which concerned Officer Kelly's IPRA file, in an effort to stop LaPorta from pursuing his claims. (Compl. ¶¶ 47–49.)

To state a claim for a conspiracy in violation of § 1983, a plaintiff must allege that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (internal citations and quotations omitted). Similarly, to state a claim for civil conspiracy under Illinois law, a plaintiff must allege "(1) an agreement to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means; (2) a tortious act committed in furtherance of that agreement; and (3) an injury caused by the defendant." *Kovac v. Barron,* 6 N.E.3d 819, 839 (Ill. App. Ct. 2014).

Though the parties dispute whether LaPorta's claims are barred by the intra-corporate conspiracy doctrine, the Court declines to reach this issue because LaPorta's allegations

fall short of stating a claim. Conspicuously absent from LaPorta's Complaint is any allegation of an agreement between the City, IPRA, and Officer Kelly to deprive LaPorta of his constitutional rights or accomplish any other unlawful purpose. LaPorta alleges that "the City, IPRA, and Kelly, individually, jointly, and in conspiracy among themselves . . . attempted to cover-up and/or suppress Kelly's and/or the City of Chicago's liability. . . ." (Compl. ¶¶ 134, 145.) This type of bare, conclusory statement is insufficient to state a claim for conspiracy. *See, Sow v. Fortville Police Dep't,* 636 F.3d 293, 304–05 (7th Cir. 2011) ("To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him."). Although an agreement may be inferred from circumstantial evidence showing "that a meeting of the minds had occurred," *Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 263 (7th Cir. 1999), no such evidence is present here. Indeed, LaPorta's conspiracy allegations pertain only to the City of Chicago, not IPRA or Officer Kelly. (Compl. ¶¶ 135–141, 146–150.) LaPorta does address these shortcomings in his response brief.

Because LaPorta has failed to allege an agreement or understanding between the City, IPRA, and Officer Kelly to

conceal police misconduct, the Court grants the City's Motion to Dismiss LaPorta's conspiracy claims.

**D.  Count IV — Deprivation of Right of Access to the Courts**

In Count IV, LaPorta alleges that the City deprived him of his constitutional right of access to the courts by concealing incidents of police misconduct, which prevented him from pursuing his *Monell* and conspiracy claims.  According to LaPorta, the full extent of the City's cover-up did not become evident until CRs and RLs were made publicly available following the Illinois Appellate Court's decision in *Kalven*. The City argues that LaPorta knew that Officer Kelly had allegedly been involved in repeated incidents of misconduct, and was equipped with the information he needed to pursue his claims prior to *Kalven.*

The First and Fourteenth Amendments safeguard an individual's right "to pursue legal redress for claims which have a reasonable basis in law and fact." *Vasquez v. Hernandez,* 60 F.3d 325, 328 (7th Cir. 1995).  To prove a violation of this right, a plaintiff must show that (1) state action frustrated his efforts to pursue a non-frivolous claim, and (2) he suffered an actual concrete injury as a result. *May v. Sheahan,* 226 F.3d 876, 883 (7th Cir. 2000).

The Court finds that LaPorta has plausibly alleged the first element of a right of access claim. The Court has already concluded that LaPorta has stated a plausible claim under *Monell*. LaPorta alleges that the City withheld the key factual ingredients he needed to state this claim — that Officer Kelly had more than a dozen CRs filed against him, that the City employed hundreds of officers with similarly long histories of alleged misconduct, and that the City failed to investigate misconduct. Accepting these allegations as true, the City's actions prevented LaPorta from gathering the information he needed to state a *Monell* claim while this action was pending in state court.

What is less clear is whether the City's alleged conduct injured LaPorta. A denial of access to the courts arises only where an alleged cover-up is to some extent successful. *Cook v. City of Chicago,* No. 06 C 5930, 2014 WL 4493813, at *7 (N.D. Ill. Sept. 9, 2014). In *Vasquez,* the Seventh Circuit held that no constitutional injury had occurred when police misconduct delayed the disclosure of key facts for a mere six months, and plaintiffs were still able to bring an action in state court. *Vasquez v. Hernandez,* 60 F.3d 325, 329 (7th Cir. 1995). However, the Seventh Circuit has also cautioned that "defendants need not literally bar the courthouse door" for a

right of access claim to arise. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts,* 414 F.3d 783 (7th Cir. 2005); *see, e.g., Rainey v. City of Chicago,* No. 10 C 07506, 2013 WL 941968, at *12 (N.D. Ill. Mar. 11, 2013) (allowing right of access claim to proceed where plaintiff was forced to depose dozens of officers to obtain information necessary to bring claim); *Cook v. City of Chicago,* No. 06 C 5930, 2014 WL 4493813, at *7 (N.D. Ill. Sept. 9, 2014) (allowing right of access claim to proceed where plaintiff had to confront statute of limitations and equitable estoppel issues as a result of delay).

Although the "courthouse door" has not yet closed completely (as the City now concedes that LaPorta's claims may not be time barred), the alleged cover-up has resulted in a significant delay that far exceeds the six-month gap in *Vasquez.* It has taken more than four years for Plaintiff to gather the facts needed to state a claim against the City under *Monell.* Although LaPorta knew that repeated complaints of misconduct had been filed against Officer Kelly early on, he alleges that only after *Kalven* and the public disclosures that followed did it become apparent that the City had a widespread policy of condoning such misconduct. The City's

alleged cover-up also forced LaPorta to litigate numerous motions to compel and sanctions motions in the state court action, and to confront a challenge here that his *Monell* claim is time barred. (*See,* City's Mot., ECF No. 24, at 11.) The Court finds that these facts support LaPorta's claim that the City has abridged his right of access to the courts, and therefore denies the City's Motion to Dismiss this claim.

## IV. CONCLUSION

For the reasons stated herein, the City's Motion to Dismiss [ECF No. 24] is granted with respect to LaPorta's conspiracy claims, and denied as to his willful and wanton, *Monell*, and right of access claims.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:4/24/2015