IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. LaPORTA, as Guardian of the Estate and Person of Michael D. LaPorta, a disabled person,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF CHICAGO, a municipal Corporation, and GORDON LOUNGE, INC., d/b/a McNALLY'S,<br><br>        Defendants. | Case No. 14 C 9665<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are two Motions filed by Plaintiff Michael A. LaPorta and related to discovery in his case: a Motion to Compel the deposition of the Mayor of Chicago, Rahm Emanuel [ECF No. 101]), and a Motion for Sanctions [ECF No. 113]. For the reasons stated herein, the Motions are denied.

### I. BACKGROUND

The case involves state-law and federal constitutional claims brought by Michael A. LaPorta on behalf of his disabled son, Michael D. LaPorta ("LaPorta"). The Court incorporates a discussion of the underlying facts contained in its prior

opinion, *LaPorta v. City of Chicago,* 102 F.Supp.3d 1014 (N.D. Ill. 2015). A few facts salient to the present discovery disputes are recounted here.

LaPorta was seriously injured while at the home of Patrick Kelly, a Chicago Police Department ("CPD") officer, in January 2010. Kelly was intoxicated, his service weapon was discharged (it is unclear how), and the bullet struck LaPorta in the back of the head. Plaintiffs allege Kelly was a troubled CPD officer with a long history of having complaint registers ("CR's") lodged against him. LaPorta initially filed suit in the Circuit Court of Cook County in 2010. After several years of litigation and what LaPorta contends were obstructionist tactics on the part of the City, the case was removed to federal court, survived a motion to dismiss, and is now proceeding through discovery.

LaPorta brings a claim pursuant to *Monell v. Dept. of Social Servs.,* 436 U.S. 658 (1978), alleging that his constitutional rights were violated due to a widespread practice by the City of Chicago of failing to discipline its CPD officers and encouraging officers to cover up misdeeds. There are other claims, but the *Monell* claim is the one most relevant to the present disputes.

**II. DISCUSSION**

**A. Motion to Compel**

In his first Motion, LaPorta asks the Court to compel the deposition of Mayor Rahm Emanuel ("Emanuel"). As mayor of the nation's third-largest city, Emanuel holds a unique position and "should not be taken away from his work to spend hours or days answering lawyers' questions unless there is a real need." *Olivieri v. Rodriguez,* 122 F.3d 406, 409 (7th Cir. 1997). LaPorta argues that Emanuel's deposition is necessary to prove the *Monell* claim, due to Emanuel's public statements referring to CPD's problem with "the thin blue line," also known as the "code of silence." Emanuel publically stated that the code of silence "leads to a culture where extreme acts of abuse are more likely," and he created a task force intended to review potential CPD misconduct, including past incidents of misconduct. The task force later echoed and expounded on the Mayor's statements regarding CPD's code of silence.

In order to prove his *Monell* claim, LaPorta must show that a code of silence existed and constituted "a widespread practice that was so permanent and well-settled as to constitute a custom or usage with the force of law, even though there was no express municipal policy or law

authorizing the practice." *McCormick v. City of Chicago,* 230 F.3d 319, 323-24 (7th Cir. 2000). Mayor Emanuel's public statements on the matter are relevant proof of that claim, weighing in favor of LaPorta's wish to depose him. The City responds that Emanuel has no personal knowledge of the facts underlying the incident at Kelly's house, but that is irrelevant to the *Monell* claim against the City, and the parties easily could agree to limit the subject matter of a deposition to the code of silence and Emanuel's knowledge of CPD's practices and culture.

The City also contends that because Emanuel was not in office at the time of the incident in 2010, any evidence he might have about CPD policy is automatically inadmissible. That argument fails also; the City does not provide any logical support for it, and Emanuel's task force was formed to investigate past events, including those that occurred before he took office. When a new mayor is sworn in, there are certainly some changes in the City's administration, but the slate is not wiped clean. Most police officers, for example, keep their jobs. The Mayor reasonably could have knowledge of a widespread practice in the CPD that has bearing on LaPorta's allegations from 2010. Indeed, Emanuel did not limit his

statements regarding the code of silence to his own tenure in office.

The City's next argument is that Mayor Emanuel is not a policymaker for the City. It's hard to take that position seriously. Common sense suggests that the Mayor has considerable authority and influence over the police department. The lone case the City cites for support, *Chicago United Industries v. City of Chicago,* 739 F.Supp.2d 1043, 1057 (N.D. Ill. 2010), simply observed that the Chicago City Council has policymaking authority for the City, and held that the City's Chief Procurement Officer was not a final policymaking authority relevant to a First Amendment claim. That has nothing to do with whether the Mayor of Chicago possesses "authority to adopt rules for the conduct of government," which is the relevant question here. *See, Auriemma v. Rice,* 957 F.2d 397, 401 (7th Cir. 1992) (internal citations omitted). Indeed, Emanuel's creation of a special task force to address what he observed as a problem within the CPD suggests that he exercises some degree of policymaking authority. Note that the Court does not intend to say that Emanuel is the final policymaker for *Monell* purposes; that issue is beside the point, because LaPorta need not identify an individual with "final policymaking authority" to succeed

on his *Monell* claim. *See, Kujawski v. Board of Commissioners*, 183 F.3d 734, 737 (7th Cir. 1999) (describing the three distinct methods for proving a municipal policy or custom under *Monell*).

The City does make one convincing argument against the motion: LaPorta has not shown that the information he seeks from Emanuel's deposition is unavailable by other means. At this point, it is unclear how LaPorta intends to use Emanuel's statements. Obviously he believes they are relevant to the *Monell* claim, and that seems correct. But why is the introduction of Emanuel's public remarks regarding the code of silence insufficient to prove LaPorta's point? What more is he searching for in his quest to depose the Mayor? What specific reason does he have to believe that the deposition "will produce or lead to admissible evidence?" *Olivieri,* 122 F.3d at 410.

The Court can imagine situations in which there could be a "real need" under *Olivieri* for the deposition, but LaPorta's Motion to Compel is premature. Aside from a failure to answer questions about what he intends to gain from the deposition, LaPorta has not even attempted to serve interrogatories on Emanuel. That omission by itself is enough to warrant the denial of the Motion to Compel the deposition. *See, Olivieri,*

122 F.3d at 410. The Court thus denies LaPorta's Motion to compel without prejudice. He may renew the Motion at a later date, if other methods of discovery fail him. The Court cautions LaPorta that should he renew the Motion, he should provide a better argument for "real need" besides "the deposition is relevant to my *Monell* claim." That is essentially all that he has offered here. And the few specifics he provides about the information he seeks – such as the basis of Emanuel's knowledge about the code of silence – could be discovered through interrogatories.

## B. Motion for Sanctions

LaPorta's next Motion requests sanctions against the City for an alleged discovery violation. LaPorta issued a supplemental discovery request to the City in September 2015 requesting a variety of CPD and Independent Police Review Authority ("IPRA") evidence relating to Patrick Kelly. Then, in June 2016, LaPorta learned that Kelly had been involved in a fatal shooting while on-duty as a CPD officer; IPRA opened an investigation into the matter, but the City had not produced any related documentation to LaPorta. The incident came to light by chance: Kelly was deposed in a separate lawsuit, and somehow the shooting came up. The City claims

that when it learned of this, it immediately notified LaPorta's counsel.

LaPorta's September 2015 discovery requests were broadly worded. Several of the line item requests arguably could trigger the City's duty to disclose the 2014 shooting; the clearest example is the following:

> Request No. 14: All reports, investigation reports, findings and results of investigation, findings, recommendation and determinations of punishment by any and all employees, agents, servants or independent contractors of the City of Chicago, including all findings and/or proposals from the Superintendent of Police, regarding complaints and allegations filed or registered against Patrick Kelly at any time since his date of hire, regardless of outcome of the investigation.

The City insists that the request did not trigger a duty to tell LaPorta about the IPRA investigation into the 2014 shooting involving Kelly. The reason, they say, is that the requests referred to complaints, allegations, or disciplinary actions, and the 2014 incident involved no such thing – it was just an investigation, pure and simple.

The City's argument borders on disingenuous. First, why would it rush to inform LaPorta about the existence of the IPRA investigation when it believed the event was completely irrelevant and not required to be produced in response to the document requests? Besides, the requests specifically reference "all reports, investigation reports, findings and

results of investigation." Such broad language should have put the City on notice that LaPorta wanted documents relating to any official investigations into Kelly's conduct as a police officer. The City argues that the request should have referenced specifically any incidents in which Kelly had discharged his firearm. But LaPorta was not required to be so specific, and his requests taken as a whole indicate that he attempted to pull in as much relevant information about Kelly as possible.

Put aside the exact wording of the document requests and consider for a moment the bigger picture: LaPorta brings suit against the City based on Kelly's history of alleged misconduct and misuse of his firearm. During the pendency of the litigation and while discovery is under way, an event occurs involving Kelly's on-duty discharge of his firearm in a fatal shooting. IPRA, an agency of the City, opens an official investigation. The Federal Rules establish a liberal discovery regime, and relevancy under Rule 26 is broadly construed. *See, e.g., Katz v. Batavia Marine & Sporting Supplies,* 984 F.2d 422, 424 (Fed. Cir. 1993); *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1325-26 (Fed. Cir. 1990). How could the City reasonably believe the shooting incident isn't relevant to LaPorta's theory of the case? It

may very well be that Kelly did nothing wrong and that the 2014 incident adds nothing to LaPorta's proof, but Rule 26(b)(1) makes clear that the scope of discovery includes information that need not be admissible as evidence at trial.

As the foregoing discussion makes clear, the City should have produced evidence of the 2014 incident in response to LaPorta's September 2015 supplemental document requests. At a July 12, 2016 hearing before this Court on the Motion for Sanctions, instead of simply admitting a mistake and attempting to offer an explanation, the City fenced with the Court over semantics and refused to acknowledge that the 2014 shooting could have any bearing on LaPorta's requests for production. *See,* (ECF No. 122, Hr'g Tr. at 7-8). The documents have now been produced, and the Court ordered the City at the July 12 hearing to turn over any additional IPRA investigations relating to Kelly, regardless of outcome.

At this juncture, the Court declines to award sanctions because it is uncertain whether LaPorta has been seriously prejudiced. He claims that he has already conducted several depositions in which knowledge of the 2014 shooting may have been useful; if he can show a convincing need to reschedule any of those depositions due to the City's omission, the Court will entertain a Motion for the costs associated with having

to redo his discovery. One thing is certain: the City is skating on thin ice in its evasion of discovery obligations. The Court admonishes the City to be more cautious in the future and more scrupulous with their disclosure, and to comply fully with this Court's order to produce all documents relating to Kelly and any IPRA investigations.

## III. CONCLUSION

For the reasons stated herein, the Court denies LaPorta's Motion to Compel [ECF No. 101], and Motion for Sanctions [ECF No. 113] with leave to refile them consistent with the Court's observations in this opinion.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: August 22, 2016