# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| FIRST MIDWEST BANK, as Guardian of | ) | |
| the estate of Michael D. LaPorta, | ) | |
| a disabled person, | ) | |
| Plaintiff, | ) | |
| v. | ) | No.  14 CV 9665 |
| | ) | Honorable Judge Leinenweber |
| CITY OF CHICAGO, a municipal corporation; | ) | |
| | ) | *Removed from the Circuit Court of* |
| | ) | *Cook County, Case No.  10 L 11901* |
| Defendant. | ) | |

## PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

Plaintiff, FIRST MIDWEST BANK, as Guardian of the estate of Michael D. LaPorta, a disabled person, by and through his undersigned counsel, and pursuant to 42 U.S.C.A. § 1988 and Federal Rule of Civil Procedure 54(d)(2) and Local Rule 54.3, files this Petition for Attorneys' Fees and Costs.

Respectfully Submitted,
**ROMANUCCI & BLANDIN, LLC**

_____/s Antonio M. Romanucci_____
One of Plaintiff's Attorneys

Antonio M. Romanucci
Debra Thomas
Martin D. Gould
Nicolette Ward
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000 *telephone*
(312) 458-1004 *facsimile*
Attorney No.: 6190290

# TABLE OF CONTENTS

Table of Contents…………………………………………………...........................i

Table of Authorities……………………………………………………….....ii-vi

Introduction and Background………………………………………...………1-5

Legal Standard………………………………………………………….…..6-8

Argument………………………………………………………….…..8-34

   I.     Plaintiff's Attorneys' Rates are Reasonable…………………………...9-23

        A. The *Hensley* Factors Support Plaintiff's Attorneys' Proposed Rates………………………………………...…...…9-14

        B. Hourly Rates in the Chicago Legal Market and Comparable Markets Nationwide Support Plaintiff's Proposed Rates. ……………………………………………….…..14-16

        C. Additional Support for Plaintiff's Rates: Awards in Other Cases…………………………………………16-21

          1. *Partners*………………………………….………....16-20

          2. *Senior Associates and Associates*…………………...………20-23

   II.    Plaintiff's Attorneys' Billed Hours are Reasonable…………………….....23-31

        A. The Time Expended by Plaintiff's Counsel was Reasonable and Necessary and Not Excessive, Redundant, or Duplicative….…23-26

        B. Plaintiff's Claimed Hours are Justified Given the Nature of the Litigation…………………………………………………26-28

        C. There Should Be No Reduction in the Lodestar Based on Plaintiff's work on the Related State Law Claims……………………...……28-31

   III.   Enhanced Attorneys' Fees from the Lodestar Are Warranted in This Case…………………………………………………….……31-33

   IV.   Plaintiff's Attorneys' Claimed Costs Are Reasonable…………………33-34

   V.    Conclusion………….…..…..….………………………………..34

**Statutes**

42 U.S.C. §1988……………………………………………………….……..6, 7, 8, 9

**Legislation**

H.R. Rep. No. 94-1558 (1976)…………………………………...…………….........................6

**Congressional Reports**

Senate Report 6, U.S. Code Cong. & Admin. News 1976………………………….....…….9

**Cases**

*Ad cock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000)………………………….21

*Adolph Coors Co. v. Truck Ins. Exch.*, 383 F.Supp.2d 93 (D.D.C. 2005)……………………….22

*Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal. 2011)……………………………..18, 20

*Barnes v. Air Line Pilots Association, International*, Case No. 1:13-cv-06243 (N.D. Ill.)……...15

*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. Ohio 2005)……………………….……32

*Berg v. Culhane,* No. 9 C 5803, 2011 WL 589631 (N.D.Ill. Feb. 10, 2011)……………...…22-23

*Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)…………………………………………..7

*Blum v. Stenson*, 465 US. 886, 897 (1984)…………………………………………………..7

*Bourke v. Beshear*, 2016 WL 164626 (W.D. Ky. 2016)…………………………………….......19

*Brotherton v. Cleveland,* 141 F. Supp. 2d 907 (S.D. Ohio 2001)……………………………..33

*Californians for Disability Rights v. California Dep't of Transp.*, 2010 WL 8746910 (N.D. Cal. Dec. 13, 2010)…………………………………………………………………..19, 20

*Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093 (N.D.Cal. 2010)……………....19

*Chambers v. Whirlpool Corp.*, 2016 WL 5922456, at *14 (C.D. Cal. Oct. 11, 2016)…………..17

*Chanel, Inc. v. Doan*, No. C 05-03464, 2007 WL 781976 (N.D. Cal. March 13, 2007)………...22

*Charles v. Daley,* 846 F.2d 1057 (7th Cir. 1988)…………………………..………………….6

*Cervantes v. Los Angeles*, 2016 WL 756456 (C.D. Cal. 2016)…………………………………18

*Chavez* v. *Rush University Medical Center*, 2013-L-008055 (Circuit Court of Cook County)……………………………..……………………………………………………...11

*City of Riverside v. Rivera*, 477 U.S. 561(1986)………………………...………………………..6, 9

*Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996)……………………………………………...19

*Corcoran v. City of Chicago*, 2016 WL 5445694 (N.D. Ill. Sep. 15, 2015)……………………..34

*Corey v. Vencor, Inc.,* 2001 U.S. Dist. LEXIS 18184 (S.D. Ind. Sept. 12, 2001)………………29

*Daniel v. Cook County*, 833 F.3d 728 (7th Cir. 2016)…………….…………………………………2

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)……………………………..5, 26

*Davis v. Prison Health Servs.*, 2012 WL 4462520 (N.D. Cal. 2012)……………………………19

*Dixon v. Oakland*, 2014 WL 6951260 (N.D. Cal. 2014) …………….……………...……18, 21

*Dominguez v. Hendley*, No. 04 C 2907 (N.D. Ill.)…. …………….……………………….………17

*Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019 (C.D. Cal. 2014)… ………...………18, 20, 21

*Downes v. Volkswagen of America*, 41 F.3d 1132 (7th Cir. 1994)………………………………33

*Edwards v. Rogowski*, 2009 WL 742871 (N.D. Ill. Mar. 18, 2009)… ………….…………..…..25

*Ehret v. Uber Technologies, Inc.*, No. 3:14-cv-113-EMC (N.D. Cal.)… ………….……………16

*Entertainment Software Ass'n v. Blagojevich*, 2006 WL 3694851, at *2-5 (N.D. Ill. Aug. 9, 2006)… ………………………………………………………………….……………………...16

*Farrar v. Hobby*, 506 U.S. 103, 114 (1992)… ……………….…………….…………….……..10

*Flanagan v. Office of the Chief Judge of the Circuit Court of Cook County*, 663 F. Supp. 2d 662 (N.D. Ill. 2009)………………………………………………………………………....29, 31

*Franks v. Bowman Transp. Co.*, 424 U.S. 747, 762-63 (1976)……………….…………….……..6

*Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649 (7th Cir. 2007)… ………….……….……..…25, 31

*Gilfand v. Planey,* 07 C 2566, 2012 U.S. Dist. LEXIS 164506 (N.D. Ill. Nov. 19, 2012)………29

*Gonzalez v. Van's Chevrolet, Inc.*, 498 F.Supp. 1102 (D.Del.1980)… ………….…………….…..27

iv

*Guam Soc. Of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691 (9th Cir. 1996)…………33

*Guerrero v. California Department of Corrections*, 2016 WL 3360638 (N.D. Cal. 2016)…18, 21

*Hadnott v. City of Chicago,* No. 07 C 6754, 2010 WL 1499473 (N.D.Ill. Apr. 12, 2010) ……..22

*Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991)……………………………………34

*Harris N.A. v. Acadia Investments*, 2012 WL 1681985 (N.D. Ill. May 14, 2012)…………...…17

*Heder v. City of Two Rivers*, 255 F.Supp.2d 947 (E.D.Wis.2003)… ……….……….…………27

*Heiar v. Crawford County*, 746 F.2d 1190 (7th Cir. 1984)………………………………..33-34

*Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984)………….……….…………………7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)…………………………………5, 6, 9, 10, 13, 14, 28

*Hollowell v. Gravett,* 723 F. Supp. 107 (E.D. Ark. 1989)……………………………………33

*Hunt v. Los Angeles*, No. 06 C 4691 (C.D. Cal. 2012)… ……………….………..…………18

*In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, 2016 WL 4765679 (N.D. Ill. Sep. 13, 2016)… …………………………………………….………..17

*Jaffee v. Redmond,* 142 F.3d 409 (7th Cir. Ill. 1998)…………………………………….....28

*Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487 (7th Cir. 2009)……..……18

*Johnson v. Kakvand*, 192 F.3d 656 (7th Cir. 1999)… ……….……………...….……………27

*Kalven v. City of Chicago,* 2014 IL App (1st) 121846. …………………………………...…30

*Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir. 1982) ………….………………….………………6

*Kovach v. CUNY*, 2015 WL 3540798 (S.D.N.Y. 2015)…. ……………………………….……19

*McKenzie v. Kennickell,* 277 U.S. App. D.C. 297, 875 F.2d 330 (D.C. Cir. 1989)…………...33

*Medina v. Metro. Interpreters & Translators, Inc.*, 139 F. Supp. 3d 1170 (S.D. Cal. 2015)…...17

*Merino v. Beverage Plus America Corp.*, 2012 WL 4468182 (S.D.N.Y. 2012) ………...…..…17

*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 289 (1989)… ……….……………………….……7

*Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978)…………..1, 2, 4, 12, 14, 26, 29, 30, 31

*Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014)…… …….….……...….…6, 10, 16, 22

*Moriarity v. Svec,* 233 F.3d 955 (7th Cir. 2000)……………………………………...…..28

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931 (N.D. Ill. 2009)……..17

*Multi-Ethnic Immigrant Workers v. Los Angeles*, 2009 WL 9100391 (C.D. Cal. June 24, 2009)…… ……….……….…….……………………….………………….…..18, 20, 21

*Nanetti v. Univ. of Ill. at Chi.,* 944 F.2d 1416 (7th Cir. 1991)………………………………...28

*National Rifle Ass'n v. Village of Oak Park*, 871 F. Supp. 2d 781, 788 (N.D. Ill. 2012) ……...16

*Obrycka v. City of Chicago,* 913 F. Supp. 2d 598 (N. Dist. Ill. Dec. 20, 2012)……………...….32

*Otero v. Dart, et al.*, Case No. 12-cv-3148 (N.D. Ill.)… ……….……………………………15

*Pappenfuss v. Receivable Management Services Corp.*, No. 13-cv-175, 2013 WL 5427891 (E.D. Wis. Sept. 26, 2013)…… ……….…….……….……………………………..………9

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)… ………….…………….………7, 9

*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632 (7th Cir. 2011)………….……………9, 22

*Pierce v. County of Orange*, 905 F. Supp. 2d 1017 (C.D. Cal. 2012)… ……….……………18

*Private Bank and Trust Company v. City of Chicago, et al.*, 2014………….………….………12

*Quinn v. Nassau County Police Dep't,* 75 F. Supp. 2d 74 (E.D. N.Y. 1999)………………....33

*Recouvreur v. Carreon*, 940 F. Supp. 2d 1063 (N.D. Cal. 2013)… ………………...……….17

*Regalado v. Chicago*, No. 96 C 3634 (N.D. Ill.)… ……….……….……………………….11

*Reid v. Unilever United States, Inc.*, 2015 WL 3653318 (N.D. Ill. June 10, 2015)… ………..17

*Restivo v. Nassau County*, 2015 WL 7734100 (E.D.N.Y. 2015)… ……….……….………19

*Richlin Sec. Service Co. v. Chertoff*, 53 U.S. 571 (2008)………………………………...…7

*Robinson v. City of Harvey*, 2008 WL 4534158 (N.D. Ill. Oct. 7, 2008)………………….…..20

*Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012 (C.D. Cal. 2014)…………………………...18, 20

*Shakman v. Democratic Org. of Cook County*, 677 F. Supp. 933 (N.D. Ill. 1987)……….…..32

*Smith v. Altman*, 2015 WL 5675376 (N.D. Ill. Sep. 21, 2015)…………………………………..34

*Soto v. Adams Elevator Equipment Co.,* 941 F.2d 543 (7th Cir. Ill. 1991)……………….…28-29

*Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999)…………………14, 28

*Telpro, Inc. v. Renello*, 1994 WL 380607 (N.D. Ill. July 18, 1994)……………………………..10

*Tinman v. Advocate Christ Hospital & Medical Center, et. al.,* 2002-L-016398 (Circuit Court of Cook County)……………………………………………………………………………………11

*Torres v. O'Neill Cancel*, 524 F.3d 331 (1st Cir. 2008)………………………………………....27

*Valdivia v. Brown*, 848 F. Supp. 2d 1141 (E.D. Cal. 2011)……………………………..…19

*Young v. Sarles*, 197 F. Supp. 3d 38 (D.D.C. July 11, 2016)………………………………..18, 20

*Young v. Verizon's Bell Atlantic Cash Balance Plan*, 783 F. Supp. 2d 1031 (N.D. Ill. 2011)..…17

## **Publications**

Legal Fees Cross New Mark: $1500 an Hour, The Wall Street Journal, http://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708 (last visited Mar. 24, 2017)……………………………………………………………………....19

# INTRODUCTION AND BACKGROUND

By any measure, Plaintiff's counsel obtained an exceptional result for their client, Michael D. LaPorta, a spastic quadriplegic, in this very complex and risky case. After seven years of highly contested litigation and a trial lasting almost a month, the jury found that the Defendant City of Chicago violated Michael D. LaPorta's constitutional rights, and awarded him $44.7 million in compensatory damages. Through a coordinated effort of their skills, commitment, and pooled resources, counsel have achieved a jury verdict that is the highest awarded __*ever*__ in the State of Illinois for a police misconduct case,[1] one of top awards of its kind in civil rights history, and one of the only *Monell* verdicts awarded before this Court in the past decade. [Ex. 1, D. Thomas Aff., ¶ 21; Ex. 2, Jon Loevy Aff., ¶ 7.] Lauded throughout the civil rights community, this verdict is not only an excellent result for the Plaintiff, but also has the potential to create lasting reforms within the City of Chicago and its police department in terms of how the City investigates and disciplines officers for on and off duty misconduct, and how the City identifies and deals with officers with patterns of bad behavior.

However, obtaining this verdict was an extremely time-consuming, expensive and challenging undertaking, and Plaintiff's counsel took substantial risk, a risk most law firms would not have undertaken, in pursuing Michael D. LaPorta's claims against the City of Chicago. Civil rights litigation implicating police agencies in officer misconduct are often difficult and expensive to pursue, requiring experience in a highly specialized area of federal practice. [Ex. 3, M. Kanovitz Aff., ¶¶ 4-9.] Michael D. LaPorta's case was significantly more challenging than the typical civil rights case for several distinct reasons. First, as this Court is aware, lawsuits against the City of Chicago for alleged *off-duty misconduct* tend to be even more

---

[1] And likely one of the highest police misconduct verdicts in the country.

difficult, expensive and complex than where the officer is on-duty and clearly within the scope of employment because such cases require the plaintiff to prove that the constitutional violations were caused by the municipality itself. *Id.* at ¶¶ 10-13. Here, in order to establish causation, Plaintiff had to establish that the City's *de facto* policies and Code of Silence were the "moving force" that emboldened Patrick Kelly to drink to excess and shoot LaPorta with his service weapon on January 10, 2010. [Dkt. 405, p. 47.]

Second, Plaintiff's claim relied on a *Monell*-only recovery, magnifying the burden and risk of loss. [Ex. 3, M. Kanovitz Aff., ¶¶ 12-13.]  As the Seventh Circuit highlighted in *Daniel v. Cook County*, 833 F.3d 728 (7th Cir. 2016), discovery in *Monell* cases require extensive investigation into systemic failings, and often result in extensive motion practice. [Ex. 3, M. Kanovitz Aff., ¶¶ 12-13.] *Monell* cases also often require the plaintiff's attorneys to invest heavily in experts qualified to present specialized testimony about the administration and operation of police investigations. *Id.*

Among difficult *Monell* cases, this one proved particularly challenging because of the lack of direct evidence available regarding who shot Michael D. LaPorta. In addition to having to retain experts to establish the City's systemic failings and Code of Silence, Plaintiff's counsel had to also retain numerous experts to recreate the scene of the shooting, including numerous blood spatter, DNA evidence, gunshot residue, and firearms experts.  In order to establish a constitutional harm sufficient to impose liability on the City, Plaintiff had to prove that Kelly shot LaPorta, as "a non-detained individual's self-harm is not an actionably constitutional harm." [Dkt. 405, p. 32.]  This was particularly challenging given that Michael D. LaPorta, the only other witness to the shooting other than Kelly, sustained severe traumatic brain injury after being shot in the head, leaving him unable to speak for years. When LaPorta was finally able to

communicate, he was incapable of communicating without help, able to speak only short sentences, blind in one eye, deaf in one ear, and wheelchair bound. Moreover, based on the evidence available, Kelly had no obvious motive to shoot LaPorta. Accordingly, the facts were highly contested, and Plaintiff's theory – which was at odds with the official conclusion reached by the Chicago Police Department (CPD) – was heavily reliant on circumstantial evidence.

In proving his case, Plaintiff was also up against the City's systemic and far reaching Code of Silence which aimed to conceal Officer Kelly's misconduct and shield him from any consequences. As established at trial, the CPD officers and Independent Police Review Authority (IPRA) investigators investigating the shooting failed to, among other things, preserve key material evidence such as Kelly's text messages from the night of the shooting that could have shed light on Kelly's motive or subsequent attempt to cover-up his misconduct; allowed a highly intoxicated and belligerent Kelly to walk around the scene subjecting it to contamination; failed to take good quality photos of the blood spatter; failed to preserve any evidence inside Kelly's bedroom (let alone go inside his bedroom) where the service weapon was allegedly taken; failed to breathalyze Kelly until 12 hours after the shooting; aggressively pushed a suicide theory onto witnesses and the family before evidence was fully gathered, tested and analyzed; and even fabricated witness testimony in reports. In one instance, CPD officers tried to convince LaPorta's friend Matt Remegi that LaPorta committed suicide despite his insistence it was completely out of character; at deposition and trial, Remegi testified the report the police drafted about his comments regarding LaPorta's depression were manufactured.

The challenging nature of the case was compounded further by the fact that the litigation lasted approximately seven years, and Defendant City had exclusive control of most of the relevant evidence throughout discovery and trial. During the course of discovery, the parties took

at least 93 depositions, and exchanged and reviewed around 80,000 pages of documents. [Ex. 4, Deposition List; Ex. 1, D. Thomas Aff., ¶ 18.] Nineteen experts were retained by the parties,[2] requiring extensive expert discovery and additional document review and deposition preparation. [Dkt. 315, pp. 14-19.]

Defendant's counsel disputed almost every issue at every stage, devoting thousands of attorney hours to those efforts. In addition to the contested *Monell* discovery, Plaintiff had to file countless motions to compel essential discovery, including Officer Kelly's citizen complaint history, a central piece of evidence in the case. Defendant City's tactics culminated in Plaintiff's successful filing of his deprivation of right of access to the courts claim. [Dkt. 42.]

One of Plaintiff's experts, Gregory Kulis, an experienced federal litigator, opines that:

> The City of Chicago delays its investigations for months and many times years to prevent individuals from truly having access to reports, witnesses and forensic evidence which results in their lack of access to the courts. This was done in this case.
>
> The City of Chicago through its Law Department has traditionally delayed discovery to prevent plaintiffs becoming cognizant of true liability against Chicago Police Officers. In this case it is apparent this was done, evidence by the Motions to Compel, court orders to comply, sanctions and delays by the City.
> …
>
> The City of Chicago's actions pertaining to the investigation and its refusal and failure to provide the investigation and reports was the proximate cause of additional years being added to the litigation, prevented access to the courts and proximately caused extreme amounts of attorney hours, fees and costs to be incurred by the Plaintiff. It appears this was an attempt to prevent fact finding in this litigation.

[Ex. 5, Kulis Dep., p. 7, Expert Report, pp. 2-3.]

On July 31, 2017, the parties filed cross motions for summary judgment, which consisted

---

[2] Plaintiff had initially retained and disclosed 11 experts, but one of his experts, Vincent DiMaio, suffered a debilitating physical injury after he was disclosed and deposed, requiring Plaintiff to retain an additional expert to review the discovery and testify in his place. [Ex. 1, ¶ 14.]

of hundreds of pages of briefing and thousands of pages of exhibits. [Dkt. 238-246.] On September 19, 2017, the parties again engaged in extensive briefing, now on the motions *in limine*. The Defendant City filed 25 motions *in limine* to bar evidence, as well as *Daubert* motions against six of Plaintiff's experts (Reiter, Rothman, Perez, Ziejewski, Balash and Howland) and a motion to bifurcate the trial. [Dkt. 327.] Likewise, Plaintiff filed 30 of his own motions *in limine*, and numerous *Daubert* motions. [Dkt. 316-343.]

Notwithstanding the long odds, throughout the seven years of litigation, Plaintiff's counsel proceeded to do everything that needed to be done to win, investing over 9,500 hours of attorney time and approximately $748,979.03 in out-of-pocket costs. [Dkt. 490.] Michael D. LaPorta was provided with representation on par with the type of service available to clients of the most distinguished large law firms, without which Michael D. LaPorta very well might have come up short. Plaintiff's counsel undertook this commitment to Mr. LaPorta's case despite the very real possibility of receiving nothing for all of their labor and financial investment. Few law firms could, or would, make such an investment in time, money and resources.

Perhaps recognizing the long-shot nature of the action, Defendant City of Chicago rejected all of Plaintiff's settlement demands, and never put a single dime on the table until September 15, 2017 (two weeks before trial). [Dkt. 315, p. 23; *see also* Ex. 6, A. Romanucci Aff., ¶¶ 47-51.] Having insisted the past seven years that a judgment by the Court or trial on the merits was the only way that this matter could be resolved, the Defendant is now responsible under the law for the attorneys' fees and costs associated with their litigation strategy. And having won a record-breaking result for their client, Plaintiff's counsel is entitled to their full loadstar of $4,520,567.50, plus an upward enhancement. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Therefore, as set forth below, Plaintiff's fee petition should be readily approved.

**<u>LEGAL STANDARD</u>**

"The purpose of §1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley,* 461 U.S. at 429 (quoting H.R. Rep. No. 94-1558, p. 1 (1976)). Congress provided for fee awards under §1988 because it considered civil rights litigation to be a matter of the "highest priority" to the welfare of the nation. *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 762-63 (1976). Indeed, an

> examination of the legislative history of section 1988 reveals two primary
> objectives which Congress hoped to promote: first, to encourage private citizens
> to initiate court action to correct violations of the Nation's civil rights statutes . . .
> and second to insure that those who violate the Nation's fundamental laws do not
> proceed with impunity.

*Charles v. Daley,* 846 F.2d 1057, 1063 (7th Cir. 1988) (citations omitted). Thus, "punishment and deterrence are undeniably important purposes of Section 1988." *Id.* Nevertheless, the "overriding goal" of §1988 is "to reimburse with a reasonable attorney's fee those who as 'private attorneys general' take it upon themselves to invoke and thereby invigorate federal constitutional and statutory rights." *Id.*

Accordingly, based on the favorable verdict the jury awarded Plaintiff in this case, Plaintiff's lawyers, Romanucci & Blandin, Salvato & O'Toole, and Schiller Law Office ("Plaintiff's counsel"), are entitled to their attorneys' fees and costs as the prevailing party pursuant to 42 U.S.C. § 1988. *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (fee awards are designed to "encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel") (quoting *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982)). The district court is in the best position to make the "contextual and fact-specific" assessment of what fees are reasonable. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).

6

The starting point in determining the amount of a reasonable fee award is to calculate the lodestar. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). The lodestar is the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate. *Id*. From this starting point, the award may be adjusted to account for other factors, as discussed more fully below. *Id*.

The Supreme Court has made clear that the lodestar calculation is a presumptively reasonable fee award. *Blum v. Stenson*, 465 US. 886, 897 (1984). The lodestar may be enhanced in those circumstances where "the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). One such circumstance is where plaintiff's counsel has demonstrated "superior attorney performance" and has "achieve[d] results that are more favorable than would have been predicted based on the governing law and the available evidence." *Id*. Another circumstance is where "litigation is exceptionally protracted." *Id.* at 555. Third, an enhancement may be justified if there is an "unanticipated delay [in payment of fees], particularly where the delay is unjustifiably caused by the defense." *Id*. at 556.

It is also clearly established that the work of paralegals may be billed at a reasonable market rate as part of the attorneys' fee petition under § 1988. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 289 (1989); *Richlin Sec. Service Co. v. Chertoff*, 53 U.S. 571 (2008) (Section 1988 attorneys' fee embraces paralegal fees). Likewise, reasonable costs and expenses are routinely included as part of § 1988 attorneys' fee awards. *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984). As the Seventh Circuit has explained, the Civil Rights Attorneys' Fees Award Act "seeks to shift the cost of the winning party's lawyer (in cases within the intended scope of the Act) to the losing party; and that cost includes the out-of-pocket expenses for which lawyers normally bill their clients separately, as well as fees for lawyer effort. The Act would therefore

fall short of its goal if it excluded those expenses." *Id.*

## ARGUMENT

The joint fee statement sets out the parties' positions on hours and hourly rates. [Ex. 7, Joint Statement.] Following the parties' discussions pursuant to Local Rule 54.3, the parties' competing positions on reasonable fees and costs are as follows:

### *Plaintiff's Position*

| Law Firm | Attorney and Staff Fees | Hours | Costs |
|---|---|---|---|
| Romanucci & Blandin, LLC | $4,177,805.00 | 8,943.08 | $748,979.03 |
| Salvato & O'Toole | $289,435.00 | 491.10 | |
| Shiller Law Office | $53,327.50 | 154.60 | |

### *Defendant's Position*

| Law Firm | Attorney and Staff Fees | Hours | Costs |
|---|---|---|---|
| Romanucci & Blandin, LLC | $1,533,531.00 | 5,694.97 | $24,623.79 |
| Salvato & O'Toole | $3,480.00 | 11.60 | |
| Shiller Law Office | $0 | 0 | |

[Ex. 8, Chart on Plaintiff and Defendant's Position on Hours.]

In this case, there can be no dispute that Plaintiff is the prevailing party and the result he achieved is outstanding. The jury's verdict vindicated the individual constitutional violations Mr. LaPorta suffered when he was shot in the head. This verdict also has potential to lead to police reform within the City of Chicago, and how the City deals with officers with patterns of misconduct on and off-duty. Accordingly, Plaintiff's case furthered one of the express goals Congress had in mind in enacting Section 1988:

Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. And, Congress has determined that the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff. Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits . . . In addition, the damages a plaintiff recovers contributes significantly to the deterrence of civil rights violations in the future.

*City of Riverside*, 477 U.S. at 574-75 (internal citations omitted).

## I. PLAINTIFF'S ATTORNEYS' RATES ARE REASONABLE

"A reasonable hourly rate is determined by looking to prevailing market rates within the relevant community, and thus a lodestar calculation aims to approximate what a prevailing attorney would expect to receive from a paying client." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010); *see also Pappenfuss v. Receivable Management Services Corp.*, No. 13-cv-175, 2013 WL 5427891, at *1-2 (E.D. Wis. Sept. 26, 2013) (*quoting in part Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649 (7th Cir. 2011)). Fee awards under § 1988 should be equivalent to fees "in other types of equally complex Federal litigation, such as antitrust cases." *Hensley*, 461 U.S. at 447 (1983) (citing Senate Report 6, U.S. Code Cong. & Admin. News 1976, p. 5913).

The parties' positions are as follows:

| **Lawyer** | **Plaintiff's Proposed Rate** | **Defendant's Proposed Rate** |
|---|---|---|
| ***Romanucci & Blandin*** | | |
| Antonio Romanucci (Ex. 6) | $750 | $500 |
| Stephan Blandin (Ex. 9) | $750 | $400 |
| Gina DeBoni  (Ex. 10) | $500 | $200 |
| Debra Thomas (Ex. 1) | $500 | $200 |
| Michael Holden (Ex. 11) | $425 | $300 |
| Bruno Marasso (Ex. 12) | $400 | $250 |
| Bhavani Raveendran (Ex. 13) | $350 | $200 |
| Martin Gould (Ex. 14) | $350 | $225 |
| Nicolette Ward (Ex. 15) | $350 | $200 |
| Rebekah Williams | $350 | $200 |
| Kelly Armstrong | $350 | $200 |

|                          | Plaintiff's Proposed Rate | Defendant's Proposed Rate |
|--------------------------|---------------------------|---------------------------|
| Law Clerks (Ex. 16)      | $125                      | No Objection              |
| Paralegals (Ex. 17-19)   | $125                      | No Objection              |
| Admin Staff (Ex. 20-21)  | $125                      | $0                        |
| **Salvato & O'Toole**    |                           |                           |
| Carl Salvato (Ex. 22)    | $600                      | $300                      |
| Paul O'Toole             | $600                      | $300                      |
| Jason E. Hammond         | $400                      | $225                      |
| Matt Popp                | $350                      | $150                      |
| **Shiller Preyar Law Offices** |                     |                           |
| Brendan Shiller (Ex. 23) | $500                      | $125                      |
| Susan Ritatta            | $350                      | $125                      |
| Lillian McCartin         | $400                      | $125                      |
| Tia Haywood              | $350                      | $125                      |

### A. The *Hensley* Factors Support Plaintiff's Attorneys' Proposed Rates

*Hensley* instructs courts to consider the following factors in deciding a reasonable fee:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

461 U.S. at 430 n.3. Each of the *Hensley* factors supports Fields's attorneys' proposed rates.

"'[T]he most critical factor'" in determining a fee award "'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436); *see also Telpro, Inc. v. Renello*, 1994 WL 380607 (N.D. Ill. July 18, 1994). "A plaintiff who achieves excellent results should receive the entire lodestar." *Montanez,* 755 F.3d at 556. In the face of numerous hurdles, as set forth above, Plaintiff's counsel unquestionably achieved an extraordinary result. At $44.7 million, the verdict is believed to be the highest ***ever*** awarded in

the State of Illinois for a police misconduct case. [Ex. 1, ¶ 21; Ex. 22, Shiller Aff., p. 7.] The next highest verdict was achieved by Jon Loevy and his team at Loevy & Loevy in *Regalado v. Chicago*, No. 96 C 3634 (N.D. Ill.), a police brutality case in which the jury awarded a $28 million verdict. [Ex. 2, Jon Loevy Aff., ¶ 7.]  Defendant cannot dispute the degree of Plaintiff's success. In fact, in its motion for remitter, Defendant City of Chicago calls the award "monstrously excessive," which reads like an admission from Defendant that Plaintiff's counsel accomplished extraordinary results.

With respect to "the experience, reputation, and ability of the attorneys," LaPorta's attorneys respectfully submit that their credentials are on par with some of the top attorneys in the county.  [Exhibits 1, 6, 9-23.] Lead counsel Antonio Romanucci, and partner Stephan Blandin, have lead and been involved in numerous complex and policy changing cases in federal and state courts across the country, including representing victims of the Route 91/Las Vegas shooting at MGM, victims of the Pulse Nightclub shooting in Orlando, leading a federal Section 1983 stop and frisk class action lawsuit against the City of Chicago, Chicago Red Light Camera class action lawsuit ($38.7 million settlement), TWA Flight 800 and other aviation accidents, and medical malpractice cases where they obtained numerous eight figure settlements and verdicts (e.g., $30 million settlement in *Chavez* in 2016; $22.3 million verdict in *Tinman*) [Ex. 6, A. Romanucci Aff., ¶8, and CV, pp. 5-6; Ex. 9, S. Blandin CV.]

Antonio Romanucci is currently the Second Vice President of the Illinois Trial Lawyers Association (ITLA) and has held numerous leadership positions with various legal organizations, including the ITLA Executive Committee, the State of Illinois Supreme Court Rules Committee, and the American Association for Justice (AAJ)[3] Exchange Advisory Committee. [Ex. 6.] Mr.

_____

[3] AAJ is the largest plaintiff's attorney organization in the country, with approximately 20,000 members. AAJ

Romanucci served on the AAJ Board of Governors and was the immediate past chair of the Traumatic Brain Injury Litigation Group, where he has published and lectured across the country on how to litigate the brain injury case, i.e., cases like Michael D. LaPorta's. [Ex. 6, ¶¶ 9-13.] Antonio Romanucci also has unique skills and experiences in cases involving forensic evidence and accident reconstruction, skills developed in other types of complex litigation. [Ex. 6, ¶¶ 9-13.]

In addition to their experiences in a wide-array of complex litigation, Romanucci & Blandin attorneys are also among the top civil rights attorneys in the country. From 2014-2018, Antonio Romanucci was the Chair of the Police Misconduct Litigation Group for the American Association for Justice (AAJ), and lectures frequently on topics regarding civil rights litigation and trial strategy. [Ex. 6, CV] The majority of Antonio Romanucci's practice focuses on civil rights and police misconduct litigation, where he has litigated in over 15 states in both state and federal court. [Ex. 6, ¶¶ 14-21.] As lead counsel, Mr. Romanucci has obtained numerous significant verdicts and settlements in police misconduct cases, including a $17.6 million verdict in a police chase case against the City of Chicago (co-counsel Stephan Blandin); a $4.5 million settlement against the City of Chicago where police officers shot and killed a Chicago resident and then planted a gun at scene[4]; a $2.3 million verdict in the Middle District of Florida in an excessive force and *Monell* case where plaintiff was shot by police; a recent $1.31 million settlement in an excessive force and *Monell* case where client broke his nose and ribs in the District Court of New Jersey; and a recent $1.1 million settlement in a wrongful shooting case of

___

provides trial attorneys with information, professional support and a nationwide network aimed to assist trial lawyers in most effectively and expertly representing their clients. https://www.justice.org/who-we-are.
[4] In *Private Bank and Trust Company v. City of Chicago, et al.*, 2014, through the use of numerous experts and similar strategies employed in the *LaPorta* case, Antonio Romanucci was able to establish the officers at the scene planted a gun and falsified testimony, despite the fact that the only other witness to the shooting other than the officers involved was dead. [Ex. 6, A. Romanucci Aff., ¶¶ 11-13.]

a suicidal person in the Eastern District of Wisconsin. *Id.* The qualifications of the other Plaintiff's counsel are set forth in their affidavits and CVs. [Exhibits 1, 6, 9-23.] Accordingly, this *Hensley* factor, too, supports the proposed hourly rates.

Other factors to consider are the opportunity cost of the representation and the desirability of the case. LaPorta's attorneys devoted over 9,500 hours and more than $748,979.03 in out-of-pockets expenses, all while facing a substantial risk of recovering nothing. This devotion of resources meant LaPorta's lawyers could not devote time and resources to other cases that would have paid them. The case was so document intensive and was draining so much time away from the law firm's other cases, Romanucci & Blandin was forced to hire an attorney, Debra Thomas, to work primarily on just LaPorta. [Ex. 1, ¶ 6.] Moreover, the case was cost-prohibitive to most law firms, requiring countless experts to establish systemic failings by the City, recreate the scene of the shooting, and review thousands of pages of medical records to provide testimony on future medical care and life expectancy. Given that the litigation lasted seven years, involved novel legal issues, and was vigorously defended at all stages, the opportunity cost and financial risk of the litigation was especially high. Given the risk and drain on time and resources, this case viewed *ex ante* was "undesirable." [Ex. 24, M. Cherry Aff., ¶ 6.] LaPorta's attorneys' assumption of that risk and commitment to the case further support the proposed rates.

Finally, *Hensley* instructs that the Court determining a fee should evaluate the time and labor required, difficulty of issues, and skill necessary to perform the legal service properly. These factors cut heavily in Plaintiff's counsels' favor. As discussed, this was an exhaustively litigated civil rights case, lasting years and requiring an almost month long trial. During discovery and at trial, the representation required a singular and around-the-clock focus on the

case. The legal issues presented were complex, involving off-duty officer misconduct and novel *Monell*-only liability issues, which required proficiency in constitutional and tort law, civil rights issues, the rules of evidence, federal procedure, and novel legal questions not routinely presented in section 1983 cases. [Ex. 3.] Because Defendant City failed to adequately preserve and obtain relevant evidence, LaPorta's lawyers had to have a familiarity with forensic and biological evidence, and accident reconstruction, skills Romanucci & Blandin attorneys acquired in prior complex litigation. LaPorta's attorneys successfully used experts in blood spatter, DNA, gunshot residue, and firearms to recreate the scene and tell LaPorta's story to the jury. In addition to the legal and forensic evidence skills required, LaPorta's case also required a proficiency in medical terminology and experience with intricacies of quadriplegia and traumatic brain injuries. As discussed above, the trial of this case presented many obstacles that would test the most experienced trial attorneys in any field. Conducting litigation of this type and achieving the result here requires skill at a level that is rare in the market, and would be difficult to duplicate. [Ex. 23, Shiller Aff., p. 6.] Accordingly, *Hensley*'s factors justify the proposed rates.

### B. Hourly Rates in the Chicago Legal Market and Comparable Markets Nationwide Support Plaintiff's Proposed Rates.

Plaintiffs' counsel's hourly rates are consistent with the fair market rate for attorneys of comparable experience, skill and reputation in the Chicago legal market and comparable markets nationwide, and are the rates at which the attorneys have been retained by other paying clients. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999) (the "attorney's own affidavits" and affidavits from "similarly experienced attorneys attesting to the rates" sufficiently satisfy the fee applicant's burden).

In support of their Petition, Plaintiff's counsel submits the affidavit of Myron Cherry, founding partner at Myron Cherry & Associates, a complex litigation law firm based in Chicago.

[Ex. 24, ¶¶ 2, 5.] Myron Cherry has extensive experience with complex federal litigation, including but not limited to civil rights, contract, antitrust, securities actions, environmental issues, and class actions. *Id.* He has tried numerous cases before courts and juries in the Northern District of Illinois and in other jurisdictions. *Id.* Mr. Cherry and his firm have recovered hundreds of millions of dollars for members of his classes. *Id.* Mr. Cherry, who has charged clients $1,000-1,200 for his legal services in Chicago in cases involving federal litigation, opines that the hourly rate sought by Plaintiff's counsel, Antonio Romanucci and Stephan Blandin, of $750/hour is reasonable given their experience, skill and reputation in the Chicago legal market and comparable markets nationwide. [Ex. 24, ¶ 9.] In fact, this rate is a discount, as Plaintiff's counsel Antonio Romanucci has been paid approximately $1,000 an hour for legal services in other matters. [Ex. 6, ¶ 24.]

Like Mr. Shiller, Jacie Zolna, a partner at Myron Cherry & Associates with extensive experience handling complex federal litigation in the U.S. District Court for the Northern District of Illinois, also opines that the billable rates sought by Romanucci & Blandin, Salvato & O'Toole and Shiller Law Office's attorneys and staff, which ranged from $300-$750/hour for lawyers and $125/hour for all staff, reflect the fair market rate for attorneys and staff in the Chicago legal market prosecuting complex federal litigation, including civil rights litigation. [Ex. 25, ¶¶ 2, 6.] In fact, Mr. Zolna, who graduated law school in 2003 and has 17-18 years less legal experience than Antonio Romanucci and other partner level attorneys on Plaintiff's case, has had his billable rate of $600 per hour approved by numerous Federal Courts within this District as well as elsewhere, including by the Honorable Amy J. St. Eve in *Otero v. Dart, et al.*, Case No. 12-cv-3148 (N.D. Ill.) (civil rights case), the Honorable Gary Feinerman in *Barnes v. Air Line Pilots Association, International*, Case No. 1:13-cv-06243 (N.D. Ill.)

(union/employment case) and the Honorable Edward M. Chen in *Ehret v. Uber Technologies, Inc.*, No. 3:14-cv-113-EMC (N.D. Cal.) (consumer fraud case). [Ex. 25, ¶ 6.]  Mr. Zolna has also opined that "the total hours and costs expended by Plaintiff's counsel are reasonable and within the range of what would be necessary to prosecute such a case, particularly in light of the difficult nature of the case, the novel and complex issues involved and the fact that the case was taken to verdict after a 3 ½ week jury trial." [Ex. 25, ¶ 7.]

### C.  Additional Support for Plaintiff's Rates: Awards in Other Cases

LaPorta's attorneys' proposed rates are also justified by reference to fees awarded in other cases to attorneys in the community. *Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014). Attorneys in this and other jurisdictions have sought and have been awarded hourly rates that exceed or are in line with LaPorta's proposed hourly rates.[5]

### 1.  Partners

The hourly billing rates of partner-level attorneys Antonio M. Romanucci (33 years experience), Stephan Blandin (32 years experience), Brendan Schiller (15 years experience), Carl Salvato (28 years experience), Paul O'Toole (28 years experience), and Gina DeBoni (16 years experience) are reasonable. *See, e.g.*, *National Rifle Ass'n v. Village of Oak Park*, 871 F. Supp. 2d 781, 788 (N.D. Ill. 2012) (section 1983 Second and Fourteenth Amendment case approving hourly rates of $1,020 and $880 for senior attorneys); *Entertainment Software Ass'n v. Blagojevich*, 2006 WL 3694851, at *2-5 (N.D. Ill. Aug. 9, 2006) (First Amendment case

---

[5] In evaluating judicial opinions awarding fees in prior cases, it is important to consider the age of the prior case. The market for legal fees is subject to inflation, warranting upward adjustment of hourly rates awarded in older cases. For example, the National Law Journal annual billing survey found an inflationary increase in legal fees of 2.5% in 2009, 2.7% in 2010, and 4.4% in 2011. *See* Ex. 26 (NLJ 2011 Law Firm Billing Survey) (noting also that annual inflationary increases of 6% to 8% were common before 2009). Similarly, 2013 billing surveys found inflationary increases between 3.5% and 4.8% for 2013 alone. *See* Ex. 27 (NLJ 2013 Law Firm Billing Survey). This means that an hourly rate of $500 awarded to an attorney with x years' experience in 2008 justified a rate of $550 for an attorney with x years' experience in 2011, accounting solely for inflation. By the end of 2013, the rate for an attorney with the x years' experience adjusted for inflation would be nearly $600.

approving hourly rates, now 11 years old, of $585 for 27 years' experience, $425 for 10 years, $275-$340 for 4-6 years, and $215 for three years).

Hourly rates for top-end work in civil rights cases exceed what Plaintiffs' attorneys request here. For example, in *Dominguez v. Hendley*, No. 04 C 2907 (N.D. Ill.), in 2009, Gibson Dunn was hired by Loevy & Loevy to assist in opposing a petition for certiorari following a substantial jury verdict. A Gibson Dunn lawyer with nine years' experience was paid $635 per hour. It bears mention that attorneys with expertise and experience in related fields comparable to Plaintiff's attorneys' expertise and experience routinely seek and are awarded rates higher than those requested. *See, e.g.*, *In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, 2016 WL 4765679 (N.D. Ill. Sep. 13, 2016) (in class action, $800 per hour awarded to attorney with 23 years' experience, $595-$630 to attorneys with 17 years' experience, $510 to an attorney with 12 years' experience, and $425 to an attorney with 10 years' experience); *Reid v. Unilever United States, Inc.*, 2015 WL 3653318 (N.D. Ill. June 10, 2015) ($558 per hour to class action attorney with 10 years' experience); *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 783 F. Supp. 2d 1031, 1037 (N.D. Ill. 2011) ($500-750 to multiple lawyers in ERISA case); *Harris N.A. v. Acadia Investments*, 2012 WL 1681985, at *2-3 (N.D. Ill. May 14, 2012) ($560-650 in a case involving default on note); *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) ($500+ in copyright action).[6]

The hourly rates sought by Antonio Romanucci, Stephan Blandin, Carl Salvato, and

---

[6] *See also Medina v. Metro. Interpreters & Translators, Inc.*, 139 F. Supp. 3d 1170, 1179 (S.D. Cal. 2015) (employment law case approving hourly rate of $850 for senior attorney); *Chambers v. Whirlpool Corp.*, 2016 WL 5922456, at *14 (C.D. Cal. Oct. 11, 2016) (consumer class action approving hourly rates of $750 for 20+ years' experience, $625 for 14 years, $600 for 13 years, and $485 for 10 years); *Merino v. Beverage Plus America Corp.*, 2012 WL 4468182, at *2-3 (S.D.N.Y. 2012) (wage and hour case; approving hourly rates of $700 for 35 years' experience, $300 to $450 for 11 years, $275 to $300 for 5 years); *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013) (First Amendment trademark litigation approving hourly rate of $700 for public interest attorney with 20+ years' experience).

Brendan Shiller in this case are toward the top end of the pay scale for litigators. It is, however, within the range of rates for expert litigators and civil rights attorneys across the country. Where "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market," then the relevant "community" may be all practitioners across the country. *Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009). Applying that lens, the rate sought by Antonio Romanucci and Stephan Blandin is well within the acceptable range. *E.g.*, *Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (section 1983 excessive force case approving top hourly rates of $700-$975); *Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal. 2011) (prison disability discrimination case approving top hourly rates of $700-$800); *Guerrero v. California Department of Corrections*, 2016 WL 3360638, at *6-12 (N.D. Cal. 2016) (employment discrimination case approving top hourly rates of $753-$775); *Young v. Sarles*, 197 F. Supp. 3d 38, 45-52 (D.D.C. July 11, 2016) (section 1983 First Amendment case approving top hourly rates of $796); *Hunt v. Los Angeles*, No. 06 C 4691 (C.D. Cal. 2012) (Dkt. 214) (First Amendment case approving hourly rate of $750); *Cervantes v. Los Angeles*, 2016 WL 756456, at *2-3 (C.D. Cal. 2016) (section 1983 false arrest and excessive force case approving hourly rates of $700 for senior trial attorney); *Dixon v. Oakland*, 2014 WL 6951260, at *7-10 (N.D. Cal. 2014) (section 1983 false arrest and excessive force case; approving top hourly rates of $725 and $750); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1051-58 (C.D. Cal. 2014) (section 1983 First Amendment case approving top hourly rates of $675-$775); *Multi-Ethnic Immigrant Workers v. Los Angeles*, 2009 WL 9100391, at *6 (C.D. Cal. June 24, 2009) (section 1983 First and Fourth Amendment class action approving top hourly rates of $710-$800); *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1035 n.16 (C.D. Cal. 2012) (section 1983 jail class action

approving top hourly rates of $850 and $825 to two senior attorneys); *Californians for Disability Rights v. California Dep't of Transp.*, 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010) (disability access class action approving hourly rates up to $835 for 18+ years' experience); *Davis v. Prison Health Servs.*, 2012 WL 4462520, at *8-10 (N.D. Cal. 2012) (employment discrimination case approving top hourly rates of $750); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1099-1103 (N.D.Cal. 2010) (employment discrimination case approving hourly rate of $700); *Restivo v. Nassau County*, 2015 WL 7734100, at *3 (E.D.N.Y. 2015) (section 1983 wrongful conviction case approving hourly rate of $700 for two senior trial attorneys); *Kovach v. CUNY*, 2015 WL 3540798, at *2-5 (S.D.N.Y. 2015) (disability discrimination case approving hourly rates of $700 for partner); *Valdivia v. Brown*, 848 F. Supp. 2d 1141, 1143 (E.D. Cal. 2011) (section 1983 prisoner due process class action approving hourly rate of up to $800 for senior attorney); *Bourke v. Beshear*, 2016 WL 164626, at *5-6 (W.D. Ky. 2016) (section 1983 marriage case approving hourly rates of $700-$750 for senior attorneys); *Cf.* Legal Fees Cross New Mark: $1500 an Hour, The Wall Street Journal, http://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708 (last visited Mar. 24, 2017) (February 2016 article noting that large law firm partners bill up to $1,445 per hour).

Antonio Romanucci and his team's participation in the *LaPorta* case were essential to the result obtained. In fact, their unique experiences and skills in litigating traumatic brain injury cases and cases involving forensic and biological evidence, and accident reconstruction, make Mr. Romanucci and his team the best attorneys **for this particular case**. *See Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) (holding that if certain litigation "skills were perfectly transferable to civil rights litigation and as a result [attorney] was able to obtain a much better

outcome for his civil rights client than the civil rights specialist could have done, he would be entitled to his high fee"). Given that Mr. Romanucci is one of the leading personal injury and civil rights litigators in Illinois and the United States, his hourly rate of $750 should be approved.

### 2. *Senior Associates and Associates*

The hourly rates sought by Debra Thomas (14 years of experience), Michael Holden (9 years of experience), Bruno R. Marasso (5 years of experience), Martin D. Gould (3 years of experience), Nicolette Ward (1 year of experience), and other associates working on the LaPorta case and trial are reasonable as well. *Robinson v. City of Harvey*, 2008 WL 4534158, at *7 (N.D. Ill. Oct. 7, 2008) (citing 2007 National Law Journal survey as evidence of eighth-year associates billing $385, $425, and $435-$510 at various firms); *Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (section 1983 excessive force case approving hourly rates of $600 for ten years); *Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal. 2011) (prison disability discrimination case approving hourly rates of $360 to $480 for 5-10 years); *Young v. Sarles*, 197 F. Supp. 3d 38, 45-52 (D.D.C. July 11, 2016) (section 1983 First Amendment case approving hourly rates of $661 for 11+ years, and $586 for 8+ years); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1051-58 (C.D. Cal. 2014) (section 1983 First Amendment case approving hourly rates of $375 for seven years); *Multi-Ethnic Immigrant Workers v. Los Angeles*, 2009 WL 9100391, at *6 (C.D. Cal. June 24, 2009) (section 1983 First and Fourth Amendment class action approving hourly rates of $425 for eight years); *Californians for Disability Rights v. California Dep't of Transp.*, 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010) (disability access class action approving hourly rates of $475-$570 for 5-10 years).

The national market provides further support. *See Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (section 1983 excessive force case approving hourly rates of

$500 for six years); *Guerrero v. California Department of Corrections*, 2016 WL 3360638, at

*6-12 (N.D. Cal. 2016) (employment discrimination case approving hourly rates of $358 for six

years, $325 for five years); *Dixon v. Oakland*, 2014 WL 6951260, at *7-10 (N.D. Cal. 2014)

(section 1983 false arrest and excessive force case, approving hourly rates of $400 for five

years); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1051-58 (C.D. Cal. 2014) (section

1983 First Amendment case approving hourly rates of $375 for seven years); *Multi-Ethnic

Immigrant Workers v. Los Angeles*, 2009 WL 9100391, at *6 (C.D. Cal. June 24, 2009) (section

1983 First and Fourth Amendment class action approving hourly rates of $425 for eight years).

Despite Defendant's contention, Debra Thomas's work did not involve just "document

review." Under the guidance of Mr. Romanucci, Mrs. Thomas who has been an attorney for over

13 years was responsible for all aspects of the case, a tremendous responsibility. Her work

included, among other things, reviewing and answering discovery, issuing discovery, drafting

and preparing motions, working with Plaintiff's 11-12 experts and drafting expert disclosures,

and most importantly, case strategy and trial preparation. [Ex. 1, D. Thomas Aff., ¶¶ 5-20.] This

was all attorney work which Defense counsel billed the City of Chicago for, at the City's

attorney rates. Accordingly, like Plaintiff's other counsel, Ms. Thomas should also be

compensated at an attorney rate of $500, which is commensurate for an attorney with her level of

experience.

### D.  Additional Support for Plaintiff's Rates: The *Laffey* Matrix

The United States Attorney's Office for the District of Columbia has created what has

become known as the Laffey Matrix to provide an official guideline for "reasonable" rates in fee-

shifting cases. *Ad cock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 347 n.3 (6th Cir. 2000)

(describing Laffey Matrix as "an official statement of market-supported reasonable attorney fee

rates"). The most recent Adjusted Laffey Matrix, which categorizes hourly rates by years in practice for attorneys practicing civil law in the comparable market of the Washington, D.C. metropolitan area, adjusted yearly for inflation, indicates the rate of $196 an hour for Paralegal/Law Clerks, a rate of $359/hour for attorneys with 1-3 years of experience, $440/hour for attorneys with 4-7 years of experience, $636/hour for attorneys with 8-10 years of experience, $717/hour for attorneys with 11-19 years of experience, and $864/hour for attorneys with 20+ years of experience, for the year starting June 1, 2017. Available at http://www.laffeymatrix.com/see.html. [Ex. 24, Cherry Aff., ¶ 13.]

The Laffey Matrix "is a concession by that office [the United States Attorney] of what it will deem reasonable when a fee-shifting statute applies and its opponent prevails and seeks attorney fees. That concession relieves that office from having to litigate the market rate in the hundreds of fee-shifting cases that it defends." *Adolph Coors Co. v. Truck Ins. Exch.*, 383 F.Supp.2d 93, 98 (D.D.C. 2005). *See also Chanel, Inc. v. Doan*, No. C 05-03464, 2007 WL 781976, *6 (N.D. Cal. March 13, 2007) ("It is the practice of the undersigned judge to rely on official data to determine appropriate hourly rates. One reliable official source for rates that vary by experience levels is the Laffey matrix used in the District of Columbia").

The Seventh Circuit has advised the lower courts that they may take judicial notice of documents in the public domain, such as the Laffey Matrix, when evaluating the reasonableness of attorneys' hourly rates and fees. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649 (7th Cir. 2011); *Montanez*, 755 F.3d at 554. District courts in this Circuit have considered the Laffey Matrix when considering the reasonableness of hourly rates for fee awards. *See, e.g., Hadnott v. City of Chicago,* No. 07 C 6754, 2010 WL 1499473, at *6 (N.D.Ill. Apr. 12, 2010) (noting that "numerous judges in this district" have considered the Laffey Matrix as one factor); *Berg v.*

*Culhane,* No. 9 C 5803, 2011 WL 589631, at *3 (N.D.Ill. Feb. 10, 2011) (finding the Matrix to constitute "satisfactory evidence"). Plaintiff's counsel offers the Laffey Matrix in this case as further evidence of the reasonableness of their hourly rates. [Ex. 28.]

## II. PLAINTIFF'S ATTORNEYS' BILLED HOURS ARE REASONABLE

The hours billed by Plaintiff's counsel are documented on the time sheets submitted as Exhibit 29 (Romanucci & Blandin), 30 (Salvato & O'Toole), and 31 (Shiller Law Offices). Given the complexity, duration, and contested nature of the case, as well as the outstanding result ultimately obtained, Plaintiff's hours are reasonable and should be approved. [Ex. 25; Ex. 23.]

### A. The Time Expended by Plaintiff's Counsel was Reasonable and Necessary and Not Excessive, Redundant, or Duplicative.

Defendant City claims that a significant amount of time expended was "excessive, redundant, duplicative or otherwise unnecessary." However, it is clear that no time fell into these categories. First, Defendant's attorneys' own hours and billing records completely justify the amount of time spent by Plaintiff's counsel since they are nearly identical. One of the purposes of Rule 54.3 when mandating the exchange of time records is to yield information which is helpful in determining what reasonable hours are. Clearly, it is relevant – if not dispositive – that a defense attorney opposing plaintiff's attorneys hours actually spent the same amount of hours litigating the case. This is exactly the case here.

Plaintiff's counsel spent **9,588 hours** litigating the *LaPorta* case for the past seven years, from the initial filing of the lawsuit in October 2010 through the October 2017 trial. [Ex. 8.] During the litigation, Defendant City was represented by two law firms: the City's Corporation Counsel, and a private law firm Rock, Fusco, Connelly ("RFC"). Plaintiff does not have *any* hours Corporation Counsel spent working on the *LaPorta* case from October 2010 until November 2015 when RFC was retained. However, Plaintiff has been able to obtain heavily

23

redacted versions of RFC's billing records from November 2, 2015 until November 20, 2017. [Ex 32.] In just this two year period, RFC billed the City of Chicago a total of **7,782.6 hours**,[7] with **7,487.1 hours billed as attorney work** at the City's attorney rates. [Chart]  Thus, it is absolutely nonsensical that Defendant makes a claim that Plaintiff's attorneys spent "excessive, redundant or duplicative" hours on the case, or that large percentages of Plaintiff's hours were clerical or administrative work rather than attorney work, when the hours billed by attorneys would be almost identical (if not more) if Corporation Counsel's 5 years of litigation were factored in.

As one example, Defendant maintains that all the work Shiller Law Offices performed on trial preparation, including writing and researching motions *in limine* and responses; participating in the research and drafting of complicated jury instructions; and coordinating and overseeing the abstracting of 26 expert depositions and other witnesses critical to direct and cross examination, was all "duplicative, redundant and is by far the definition of overstaffing." [Ex. 23, Shiller Aff., p. 1.] Plaintiff's trial counsel, Romanucci & Blandin, was fronting not only hundreds of thousands of dollars to pursue this litigation, but also allocating tremendous resources in terms of manpower. To adequately address the hundreds of pages of pre-trial motions and to otherwise prepare for what was going to be an almost month long complex trial, a trial which Plaintiff's firm had already taken a substantial financial risk, Romanucci & Blandin enlisted the assistance of other attorneys, including Brendan Shiller and his experienced team of civil rights lawyers. [Ex. 23.] Brendan Shiller filed an appearance in this case, and was assigned work on important matters to relieve some of the burden on Romanucci & Blandin as it prepared

---

[7] Plaintiff's hours incorporate approximately 2-3 additional months which includes *some* post-trial work. Some of Plaintiff's counsel have not submitted post-trial hours yet, and will do so at a later date when and if a second petition is filed.

for trial. There is no legal authority that holds that a plaintiff is only entitled to recover attorneys' fees under Section 1988 if all the attorneys working on the case are employed by the same law firm. Similarly, there is no legal authority that requires Romanucci & Blandin to front even more money to hire another attorney on the eve of trial, or to force the firm to allocate even more of its manpower to the *LaPorta* case. In fact, enlisting the assistance of other attorneys in order to adequately and zealously represent your client is not only good strategy and lawyering, but required by the Illinois Rules of Professional Conduct.

Defendant also maintains Plaintiff's counsel did not need several attorneys at some depositions, or numerous attorneys at the mock trial, and was otherwise overstaffing assignments. For example, Defendant almost all of Carl Salvato's work is not compensable, highlighting how Mr. Salvato, like Mr. Shiller, did not participate at trial. However, in a case as complex as the LaPorta case, no one attorney (or even small group of attorneys) could have realistically mastered and incorporated all of the composite parts. The trial presentation that this Court observed required significant coordination. And the case law recognizes that time spent conferring constructively is compensable. *See Edwards v. Rogowski*, 2009 WL 742871, at *8 (N.D. Ill. Mar. 18, 2009) (rejecting defendant's arguments that plaintiff's counsel conferred excessively, noting that "multiple lawyers, working together, may lead to more efficiency and reduced costs," and that it is reasonable to spend time conferring when the case is first accepted, when a new lawyer joins the team, and when preparing for pretrial conferences and trial). Indeed, "[w]hen attorneys coordinate and share ideas before coming to court, it is more likely that the court's and the jury's time will not be wasted." *Id.*; *see also Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007) ("There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project."). In sum, it is

Plaintiff's counsel's relentless dedication to the details and tireless hours preparing for trial, which enabled them to achieve such record-breaking success in a case most lawyers would never have even considered to pursue, let alone invest over $700,000 litigating.

**B. Plaintiff's Claimed Hours Are Justified Given the Nature of the Litigation**

As discussed above, this case was hard-fought on all sides. The litigation has lasted seven years and counting. Extremely contested litigation by its very nature requires a greater commitment of attorney time. As the Court's docket reflects, there were hundreds of substantive, contested motions that this Court had to resolve throughout discovery, pretrial proceedings, and trial. Discovery lasted years, and Defendant contested LaPorta's right to discover documents and other critical information throughout. Plaintiff's counsel had to file a huge number of discovery motions to uncover critical evidence, including Kelly's citizen complaint history which was a central issue in the case. Expert discovery involved numerous expert reports and depositions.[8] *Monell*-related discovery extended for months and required an exhaustive analysis of nearly 80,000 pages of files that had mostly been in the possession of the CPD and IPRA. *Monell* discovery also required substantial, additional expert discovery. In total, the parties completed more than 93 depositions. There was substantial briefing on dispositive motions. There was extensive pretrial briefing on *Daubert* questions and motions *in limine*. Finally, there was an almost month long trial.

Defendant's litigation style forced a great expenditure of efforts by LaPorta and his attorneys. Defendant made every argument they could and fought LaPorta on every issue. Though that was their right, the Seventh Circuit has observed that "a party's uncooperativeness

---

[8] In fact, Defendant's lead counsel, Eileen Rosen, who has extensive experience handling civil rights and wrongful conviction cases, stated while the jury was deliberating that the *LaPorta* case involved more experts than any other case she has worked on.

with pretrial proceedings will increase the amount of time that the opposing attorney must devote to the case, an increase that will then be reflected in the petition for attorneys' fees." *Johnson v. Kakvand*, 192 F.3d 656, 662 (7th Cir. 1999). Had Defendant's attorneys not challenged every issue, Plaintiff's attorneys would have naturally spent far fewer hours on the litigation. In other words, Plaintiff's counsels' lodestar was amply foreseeable to Defendant—a predictable consequence of their "Stalingrad-type" defense strategy. *See Torres v. O'Neill Cancel*, 524 F.3d 331, 338 (1st Cir. 2008) ("[Defendant], as was his right, mounted a Stalingrad-type defense, employing four lawyers and battling the plaintiffs at every turn").

Moreover, Defendant City failed to even discuss potential settlement for seven years, despite numerous overtures. The only offer made to settle the case prior to trial was for $700,000, a disingenuous offer to settle a case involving a once healthy and young plaintiff who sustained catastrophic permanent injuries and requires 24/7 care. [Ex. 6, ¶¶ 47-51.] This Court should consider the City's complete unwillingness to even talk about settlement in awarding Plaintiff his full loadstar. *See, e.g.*, *Heder v. City of Two Rivers*, 255 F.Supp.2d 947, 956 (E.D.Wis.2003) ("the City has only itself to blame for the disproportionality between the attorneys' fees incurred and the amount [plaintiff] recovered . . . and [plaintiffs should not] be forced to swallow expenses incurred largely as a result of the City's approach to this litigation."); *Gonzalez v. Van's Chevrolet, Inc.*, 498 F.Supp. 1102, 1106 (D.Del.1980) ("Confronted as he was with defendant's adamant position, petitioner was required to try this case to the hilt. This necessitated a two and a half day trial . . . The objection which defendant makes to the payment of any fee in excess of the lodestar is in this sense self-inflicted because of defendant's refusal to make any [reasonable] offer in settlement of this case."). This is also the corollary of the Seventh Circuit's rule that a successful plaintiff's attorneys' fees should be

considered in light of any substantial settlement offers which the plaintiff rejected. *Moriarity v. Svec,* 233 F.3d 955, 967 (7ᵗʰ Cir. 2000).

### C. There Should Be No Reduction in the Lodestar Based on Plaintiff's work on the Related State Law Claims.

As the Supreme Court has held, the hours spent pursuing an unsuccessful claim should be excluded from a fee award only if the claim "is distinct in all respects from [the plaintiff's] successful claims." *Hensley v. Eckerhart,* 461 U.S. 424, 440 (1983). Most significantly, "[w]hen a plaintiff has obtained an *excellent result,* his attorney should recover a fully compensable fee . . . and the fee 'should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'" *Spegon v. Catholic Bishop,* 175 F.3d 544, 557 (7th Cir. Ill. 1999). In other words, "where a lawsuit consists of related claims, a plaintiff who has won *substantial relief* should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley* at 440 (U.S. 1983) (emphasis added). Even "when time is spent jointly preparing two distinct claims, the fact that one claim produces no recovery will not deprive the plaintiff of every hour spent in joint preparation." *Nanetti v. Univ. of Ill. at Chi.,* 944 F.2d 1416, 1419 (7th Cir. 1991).

Fees should not be mechanically reduced based on a chopping approach which has been expressly rejected by the Supreme Court and Seventh Circuit. *Jaffee v. Redmond,* 142 F.3d 409, 414 (7th Cir. Ill. 1998). The Seventh Circuit uses "an approach that is more in tune with the realities of litigation, in which we focus on the overall success of the plaintiff rather than the success or failure of each of the plaintiff's causes of action." *Id.* Litigants may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds in not a sufficient reason for reducing a fee. *Hensley,* 461 U.S. at 435; *see also Soto v. Adams Elevator Equipment Co.,* 941 F.2d 543 (7th Cir. Ill. 1991); *Gilfand v. Planey,* 07 C 2566,

2012 U.S. Dist. LEXIS 164506, *26 (N.D. Ill. Nov. 19, 2012) (J. Leinenweber) ("Therefore, the Court does not deem the fact that Plaintiffs were only partially successful and equally unsuccessful-against several Defendants as justification for reducing the Plaintiffs' billable hours."); *Corey v. Vencor, Inc.,* 2001 U.S. Dist. LEXIS 18184, *42-43 (S.D. Ind. Sept. 12, 2001).

First, the result obtained by Plaintiff was record-breaking. This justifies awarding all of the fees incurred without reduction. Second, the claims all stem from the same common facts. "[In] assessing the extent to which Plaintiff's work on the [state law claims] contributed to the ultimate success of the [*Monell*] claim, the court attempts to determine what work Plaintiff might have done had [he] brought only the single [*Monell*] claim, focusing on four stages of the litigation: the time before Plaintiff filed his [*Monell*] complaint, the time between filing that complaint and the denial of summary judgment, the time devoted to trial preparation and the trial itself . . . ." *Flanagan v. Office of the Chief Judge of the Circuit Court of Cook County*, 663 F. Supp. 2d 662, 670 (N.D. Ill. 2009).

In October 2010, Plaintiff filed his initial complaint against Defendants City of Chicago, Chicago police officer Patrick Kelly, and several bars in the Circuit Court of Cook County, Illinois.  Plaintiff's Complaints in state court all arose from the same January 10, 2010 shooting incident at Kelly's house where Michael D. LaPorta was shot in the head. Plaintiff's Complaints included: (1) a willful and wanton claim against the City of Chicago for, among other things, Patrick Kelly's failures to follow CPD policies and procedures causing Michael D. LaPorta's injuries; (2) a willful and wanton claim against Patrick Kelly for causing Michael D. LaPorta to be shot in the head; (3) a negligence claim against Patrick Kelly; and (4) dram shop claims against the bars where Kelly and LaPorta allegedly became intoxicated prior to the shooting. [Ex. 34, Plaintiff's State Law Complaints.]

While in state court, the parties engaged in discovery regarding the circumstances surrounding the shooting. The parties deposed approximately 10-11 witnesses, including Patrick Kelly, CPD officers that were drinking with Kelly and LaPorta prior to the shooting (Officers Allyson Bogdalek, Craig Coughlin, and April Janiszewski), and Michael D. LaPorta's father, Michael A. LaPorta, who ate dinner with Michael D. LaPorta the evening before the shooting. [Ex. 4.] In October 2014, in light of the *Kalven v. City of Chicago* decision and the associated publicly disclosed information, Plaintiff filed his Fifth Amended Complaint adding a § 1983 *Monell* claim, a § 1983 deprivation of right of access to the courts claim, and § 1983 and state law conspiracy claims. The City of Chicago filed a notice of removal shortly thereafter, removing the case from the Circuit Court of Cook County to the Northern District of Illinois [Dkt. 1], where the case remained until trial.[9]

Here, Defendant argues that all work Plaintiff's counsel performed prior to the case's removal to federal court is not recoverable. This includes plaintiff's counsel's depositions of numerous fact witnesses central to proving Plaintiff's *Monell* claim such as Officer Patrick Kelly; depositions of fact witnesses present before and after the shooting who would have been deposed in a *Monell*-only case; drafting motions to compel the City to produce documents, such as Kelly's IPRA file; opening a probate estate; meetings with investigators and experts looking into the cause and circumstances of the shooting; research regarding the potential *Monell* claims in light of *Kalven*; the drafting of Plaintiff's motion for leave to file an amended Complaint adding the *Monell* claim; discovery regarding Michael D. LaPorta's injuries; and other work that would have been necessary and undertaken had Plaintiff only filed a *Monell* claim.

Plaintiff's work while in state court is compensable because Plaintiff would have been

---

[9] Patrick Kelly settled in around September 2012 but the claims against the City of Chicago proceeded.

required to engage in the exact same discovery in a *Monell*-only case anyways. In order to establish a constitutional harm sufficient to impose liability on the City, Plaintiff had to prove that Kelly shot LaPorta, as "a non-detained individual's self-harm is not an actionably constitutional harm." [Dkt. 405, p. 32.]  Thus, Plaintiff was required to engage in extensive discovery involving the circumstances surrounding the shooting, especially because the City's own investigators were pushing a separate theory from the outset, i.e., suicide, which would have prevented Plaintiff from recovering under *Monell*.

Accordingly, all of Plaintiff's work in state court is compensable. *See Flanagan v. Office of the Chief Judge of the Circuit Court of Cook County*, 663 F. Supp. 2d 662, 670, 672 (N.D. Ill. 2009) (holding that 85% of plaintiff's reported hours for work performed on unsuccessful discrimination claim were compensable because the majority of the work "would have been necessary to succeed on the retaliation claim alone" anyways even though it was not filed yet); *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 661-2 (7th Cir. 2007) ("So long as the plaintiffs' lawyers' activities are factually related to issues on which the plaintiffs have achieved postjudgment judicial relief and the work was reasonably calculated to result in relief, the district court may grant attorneys' fees."). Moreover, Defendant City is already getting a significant discount in hours billed.[10]

## III. ENHANCED ATTORNEYS' FEES FROM THE LODESTAR ARE WARRANTED IN THIS CASE.

There is ample evidence justifying a reasonable upward enhancement of a 2.0 multiplier of Plaintiffs' counsel's lodestar. Here, Plaintiff's counsel achieved the highest verdict in Illinois

---

[10] Plaintiff's timesheets are not seeking compensation for most of the work Mr. Romanucci performed on the *LaPorta* case prior to 2016 (i.e., work from 2010-2015), the majority of Mr. Romanucci paralegal Jim Mudgett's work prior to his departure in 2016, and work performed by associate Angela Kurtz. The majority of Plaintiff's counsel and staff did not bill for drafting and reviewing emails, which is a customary expense compensable under Section 1988, and customarily work billed by defense attorneys.

for a civil rights case. Moreover, as this Court is aware, there were tremendous obstacles which Plaintiff had to be overcome. In finding that the City of Chicago and its police department fails to investigate on and off-duty officer misconduct, and fails to maintain an adequate an early warning system that identifies officers with patterns of reckless and dangerous behavior, the jury's verdict will also serve as a much-needed catalyst in forcing the City to change its policies and practices. At trial, Judith Roberts, and the DOJ and PATF reports, confirmed that the City has the resources and technology to create an adequate early warning system. As Alderman Moore testified at trial, throughout its history the City often needs a push from external forces, such as scandals or verdicts, to reform policies and practices and tackle corruption and abuse. Like the *Obrycka* decision before it, Plaintiff's verdict will serve as another catalyst for much-needed police reform, and should force the CPD to take officers who beat their spouses and demonstrate patterns of bad behavior more seriously just as it would regular citizens.

Thus, Plaintiff's case is precisely one of those cases where Plaintiff's counsel achieved extraordinary results in a very difficult case, and warrants an upward adjustment to its lodestar. This is particularly the case given the case's significance to the public and the anticipated reforms to result from the verdict. *See, e.g.*, *Shakman v. Democratic Org. of Cook County*, 677 F. Supp. 933, 944-49 (N.D. Ill. 1987) (awarding a one third quality enhancement in a class action where the court noted the case had great significance and plaintiffs' counsel showed "imagination and creativity"; the court's decision was based in part on "insights derived by [its'] extensive involvement with [the] case"); *Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. Ohio 2005) (upholding a district court's 1.75 multiplier for attorney's fees after a jury verdict in favor of a transgender police officer who was subjected to workplace discrimination. Citing case law from around the country, the Sixth Circuit stated: "While use of such a multiplier

nearly doubled the award of attorneys' fees, the district court enjoys wide discretion in awarding

attorneys' fees") (citing *Guam Soc. Of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 697

(9th Cir. 1996) (200 percent multiplier upheld because of the undesirability of the case and the

exceptional nature of the case); *McKenzie v. Kennickell,* 277 U.S. App. D.C. 297, 875 F.2d 330,

338-39 (D.C. Cir. 1989) (awarding twenty five percent enhancement for exceptional results and

where counsel "remained active in the litigation over a period of fifteen years"); *Brotherton v.*

*Cleveland,* 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (awarding 150 percent multiplier for solo

practitioner who achieved exceptional results by taking an unpopular case others turned down

and bringing to light a previously unrecognized cause of action); *Quinn v. Nassau County Police*

*Dep't,* 75 F. Supp. 2d 74 (E.D. N.Y. 1999) (awarding 10% percent multiplier in employment

discrimination case due to ground breaking nature of case); *Hollowell v. Gravett,* 723 F. Supp.

107, 110 (E.D. Ark. 1989) (awarding 75% percent quality enhancement where plaintiff's counsel

prepared the case thoroughly and provided superb representation "under the most adverse

circumstances.").

## IV. PLAINTIFF'S ATTORNEYS' CLAIMED COSTS ARE REASONABLE

Finally, in their years-long fight to vindicate Michael D. LaPorta's rights, his attorneys

spent substantial sums of money out of pocket on the costs of the case. In particular, Romanucci

& Blandin spent $748,979.03. These costs were reasonably expended by Plaintiff's attorneys in

light of the extensive discovery and need for countless experts. Plaintiff seeks to recover these

costs under federal statutes and rules, including but not limited to 42 U.S.C. § 1988, 28 U.S.C.

§§ 1920 & 1924, and Federal Rule of Civil Procedure 54. *See Downes v. Volkswagen of*

*America,* 41 F.3d 1132, 1144 (7th Cir. 1994); *see also Heiar v. Crawford County*, 746 F.2d 1190,

1203-04 (7th Cir. 1984) (listing as examples of recoverable expenses postage, phone calls,

copying, travel, and expert witnesses); *Smith v. Altman*, 2015 WL 5675376, at *1 (N.D. Ill. Sep. 21, 2015) ("Expert witness fees may be included, at the Court's discretion, in the award of attorneys' fees."); *Corcoran v. City of Chicago*, 2016 WL 5445694, at *5 (N.D. Ill. Sep. 15, 2015) (costs recoverable include computerized legal research). Spreadsheets listing each cost reasonably expended in this case have been submitted as part of Dkt. 490.

Counsel does not seek the costs for Lexis/Westlaw fees, which if sought, would be substantial in a case like this. Recent caselaw permits the recovery of Westlaw fees as part of attorneys' fees. *See*, *e.g.*, *Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991). Thus, these unclaimed expenses make the Petition even more reasonable.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Plaintiff respectfully requests the Court enter judgment as follows: (1) $4,177,805 in attorneys' fees and $748,979.03 in costs for Plaintiff's attorneys Romanucci & Blandin and against Defendant; (2) $289,435.00 in attorneys' fees for Plaintiff's attorneys Salvato & O'Toole and against Defendant; and (3) $53,327.50 in attorneys' fees for Plaintiff's attorneys Shiller Law Offices and against Defendant, with a reasonable upward enhancement of all fees of a 2.0 multiplier. In addition, if this Court is not satisfied with submissions of affidavits regarding reasonableness of requested fees, expenses, and costs sought by Plaintiff, Plaintiff further requests that this Court set and hold an evidentiary hearing on this matter so that Plaintiff may establish the reasonableness of the requested amount.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC


 /s/ Antonio M. Romanucci
Attorney for Plaintiff

Antonio M. Romanucci
Debra Thomas
Martin D. Gould
Nicolette Ward
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, Illinois 60602
Attorney #: 35875
(312) 458-1000
(312) 458-1004 *facsimile*
aromanucci@rblaw.net
mgould@rblaw.net

Carl Salvato
**SALVATO & O'TOOLE**
53 West Jackson Blvd., Suite 1750
Chicago, IL 60604
(312) 583-9500
(312) 583-1910 *facsimile*
Attorney No.: 6204236

Brendan Shiller
**Shiller Preyar Law Offices**
at The West Side Justice Center
601 S. California
Chicago, Illinois 60612
312-226-4590